# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3255

_____

| | | |
|---|---|---|
| Karen Collins, and on behalf of Edna Mae Campbell, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Gary Bellinghausen, | * | |
| | * | |
| Defendant/Appellant, | * | |
| | * | |
| Joyce Lewis, | * | Appeals from the United States |
| | * | District Court for the |
| Defendant, | * | Northern District of Iowa. |
| | * | |
| Rick Meyer, Lena Knight, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| David Willis, | * | |
| | * | |
| Defendant/Appellant, | * | |
| | * | |
| James Comstock, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Angela Knipple, | * | |
| | * | |
| Defendant/Appellant. | * | |

_____

No. 97-3256

_____

| | |
|---|---|
| Karen Collins, and on behalf of<br>Edna Mae Campbell, | * |
| | * |
| | * |
| Plaintiff/Appellee, | * |
| | * |
| v. | * |
| | * |
| Gary Bellinghausen, | * |
| | * |
| Defendant, | * |
| | * |
| Joyce Lewis, | * |
| | * |
| Defendant/Appellant, | * |
| | * |
| Rick Meyer, Lena Knight, David Willis, | * |
| James Comstock, Angela Knipple, | * |
| | * |
| Defendants. | * |

_____

No. 97-3257

_____

| | |
|---|---|
| Karen Collins, and on behalf of<br>Edna Mae Campbell, | * |
| | * |
| | * |
| Plaintiff/Appellee, | * |
| | * |
| v. | * |
| | * |

-2-

Gary Bellinghausen, Joyce Lewis,    *
Rick Meyer, Lena Knight, David      *
Willis,                             *
                                    *
            Defendants,             *
                                    *
James Comstock,                     *
                                    *
            Defendant/Appellant,    *
                                    *
Angela Knipple,                     *
                                    *
            Defendant.              *

_____

Submitted:  February 9, 1998

Filed:  August 10, 1998

_____

Before  RICHARD S. ARNOLD,[1] Chief Judge, WOLLMAN, Circuit Judge, and
        LIMBAUGH[2], District Judge.

_____

WOLLMAN, Circuit Judge.

Karen Collins, individually, and on behalf of the estate of her grandmother, Edna Mae Campbell, filed this lawsuit under 42 U.S.C. § 1983 against several state and local

_____

[1]The Honorable Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998.  He has been succeeded by the Honorable Pasco M. Bowman II.

[2]The HONORABLE STEPHEN N. LIMBAUGH, United States District Judge for the Eastern District of Missouri, sitting by designation.

officials.[3]  The appellants appeal from the denial of their respective motions for summary judgment.  We reverse.

# I.

Edna Campbell, born in 1904, was hospitalized in Lake City, Iowa, in March of 1992.  The discharge summary prepared by her doctor noted that Campbell was suffering from a number of physical problems, including diabetes, CVA with left-sided hemiplegia, blindness secondary to CVA, and atherosclerotic heart disease.  On March 20, 1992, Campbell entered the Shady Oaks Rest Home in Lake City with the assistance of Lena Knight, to whom Campbell had given a power of attorney a year earlier.

Collins came to Lake City from her home in California in April of 1992.  She stayed in Campbell's house and visited her grandmother at the rest home.  Collins became dissatisfied with the care that Campbell was receiving at Shady Oaks.  On July 10, 1992, Collins removed Campbell from Shady Oaks without consulting the staff on the pretext of taking her for an automobile ride.  Collins took Campbell to a hospital in nearby Fort Dodge for a physical examination.  On July 13, Campbell's treating physician released her to Collins's care with instructions that Campbell be taken to see defendant Dr. James Comstock later that afternoon.  Collins did not take Campbell to see Dr. Comstock, however, choosing instead to take her back to Campbell's home.

That same day, the Iowa Department of Human Services received a report that Campbell had not appeared for her scheduled appointment with Dr. Comstock that afternoon.  Defendant Joyce Lewis, an Iowa state investigator, initiated an investigation

---

[3]Collins's pro se complaint also included claims brought pursuant to 28 U.S.C. §§ 1985, and 1986.  The district court, after determining that these claims lacked a jurisdictional basis, considered only Collins's section 1983 claim.

into the matter.  Lewis asked defendant Angela Knipple, a Lake City police officer, to visit Campbell's home.  Knipple went to the home, spoke with Collins, observed that Campbell was sleeping on a couch, and reported her observations to Lewis.  Lewis then sent Knipple back to verify if Campbell was receiving her medication.  Collins was either unable or unwilling to locate any of the medication and told Knipple that she was not giving Campbell all of the medicine.  Upon receiving Knipple's second report, Lewis decided to visit the Campbell residence herself to gather more information.  Accordingly, Lewis went to the Campbell home the next morning, July 14.  Although much of the conversation between Collins and Lewis is in dispute, it is undisputed that Lewis was unable to gather much information from Collins, who was largely uncooperative.  Collins did inform Lewis that Kay Blessington, a public health nurse, had recently visited the Campbell home.  After leaving the Campbell home, Lewis made unsuccessful attempts to contact Blessington.

Lewis then consulted with defendant David Willis, the Calhoun County Attorney, about the findings she and Knipple had made.  Willis, in turn, contacted Dr. Comstock in his capacity as Calhoun County Medical Examiner.  After Dr. Comstock opined that Campbell was a possible victim of abuse, Willis ordered that Campbell be removed from her home.  Lewis, Knipple, and two ambulance drivers went to the Campbell residence to remove Campbell from her home.  Defendant Gary Bellinghausen, a Lake City police officer who lived across the street from the Campbell residence, agreed to assist Knipple in the removal.  Upon the officers' entrance into the home, Collins vigorously resisted their attempts to remove Campbell, going so far as to sit on Campbell's head as she lay on a gurney.  Collins screamed at the officers and struck Officer Bellinghausen in the chest several times.

After Campbell was examined at a hospital, Officers Knipple and Bellinghausen filed affidavits recounting the details of the removal.  Later that day, a local magistrate reviewed the affidavits, found probable cause to believe that Collins was seriously mentally impaired and was likely to injure herself or others if allowed to remain at

liberty, and ordered the county sheriff to take Collins into custody for involuntary commitment. Collins was subsequently removed from the Campbell residence and detained at the Mental Health Institute in Cherokee, Iowa. She was evaluated by a doctor on July 18. After a hearing on July 20, a state district court judge ordered that Collins be released.

Collins then encountered resistance when she tried to contact Campbell, who had been admitted to the Gowrie Care Center. Lena Knight had directed the Gowrie staff to deny Collins's requests for visitation. Collins later filed a petition to be appointed Campbell's guardian, but she removed Campbell from the state before a hearing could be held. Campbell died in California the following year.

Collins then filed this action, alleging three causes of action: (1) that the removal of Campbell from her home violated both Campbell's and Collins's constitutional rights; (2) that Collins's constitutional rights were violated by the institution of the involuntary commitment proceedings against her; and (3) that Collins's constitutional rights were violated by the interference with her attempts to have further contact with her grandmother.

The district court dismissed some of the defendants, granted partial summary judgment to Willis, and denied summary judgment to the remaining defendants. After the district court's action, all of the appellants remained as defendants in Collins's first claim; Knipple, Bellinghausen, Lewis, and Comstock remained as defendants in Collins's second claim; and Lewis remained as the sole defendant in Collins's third claim.

## II.

We review a denial of summary judgment *de novo,* applying the same standard that governed the district court's decision. See Buckley v. Rogerson, 133 F.3d 1125, 1126 (8th Cir. 1998). We disagree with Collins's assertion that Johnson v. Jones 115 S. Ct. 2151 (1995), and Behrens v. Pelletier, 116 S. Ct. 834 (1996), require a more deferential standard of review in cases involving the denial of summary judgment on qualified immunity grounds. As we observed in Heidemann v. Rother, our analysis in qualified immunity cases includes a traditional *de novo* review of the record, "characterized by [Johnson and Behrens] as a determination of 'what facts the district court, in the light most favorable to the nonmoving party, likely assumed.'" 84 F.3d 1021, 1027 n.4 (8th Cir. 1996) (quoting Behrens, 116 S. Ct. at 842). "Oftentimes it is, of course, merely a theoretical supposition that the district court 'assumed' any particular facts in deciding to deny a motion for summary judgment on qualified immunity grounds." Id. We affirm if the facts, viewed in this light, show no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See Johnston v. Warren County Fair Ass'n, Inc., 110 F.3d 36, 38 (8th Cir. 1997).

## III.

Although we do not agree with Collins's argument that Johnson and Behrens alter our standard of review, those decisions do require us to determine whether we have jurisdiction to consider this appeal. A district court's denial of a motion for summary judgment based on qualified immunity is immediately appealable. See Reece v. Groose, 60 F.3d 487, 489 (8th Cir. 1995). Our jurisdiction is limited to the resolution of disputes related to abstract issues of law concerning qualified immunity, and we may not consider sufficiency of evidence arguments merely because they arise in a qualified immunity context. See Behrens, 116 S. Ct. at 842. Because the individual defendants argue that their actions were reasonable in light of their knowledge at the time of the alleged transgressions, we conclude that the issues

presented here are immediately appealable. "Johnson permits a [public official] to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the Harlow [v. Fitzgerald] standard of 'objective legal reasonableness.'" Id.; see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (detailing standard of objectively reasonable conduct).

Collins contends that we lack jurisdiction to consider Dr. Comstock's proffered qualified immunity defense. Comstock relied on Iowa statutes and the defense of absolute prosecutorial immunity in his motion for summary judgment. Although Comstock asserted a qualified immunity defense during the summary judgment hearing, the district court did not specifically address the issue in its opinion. Comstock has requested a remand to the district court for a ruling on his assertion of qualified immunity. Given the undisputed facts and the well-defined legal issues involved, however, we conclude that we have jurisdiction over Dr. Comstock's claim of qualified immunity and that a remand is unnecessary.

## IV.

Qualified immunity protects state actors from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Reece, 60 F.3d at 491 (quoting Harlow, 457 U.S. at 818). In ruling upon a defense of qualified immunity, we first determine whether the law that the defendant is accused of having violated was clearly established and then examine the information possessed by the defendant at the time of the alleged violation. See id. at 489 (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)). Thus, the determination of a qualified immunity defense is "fact-intensive." See id. at 490.

**A.**

Collins alleges that the removal of Campbell from her home was a violation of Campbell's Fourth Amendment right to be free of unreasonable seizures. Warrantless entries "are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." Mincey v. Arizona, 437 U.S. 385, 390 (1978). We conclude that the situation at the Campbell residence fell within one of those exceptions, for the Mincey Court recognized that "the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." Id. at 392. See also United States v. Morales, 737 F.2d 761, 764-65 (8th Cir. 1984); United States v. Selberg, 630 F.2d 1292, 1295 (8th Cir. 1980). The defendants' knowledge of Campbell's frail and apparently deteriorating physical condition, her missed appointment with Dr. Comstock, Collins's unwillingness or inability to locate Campbell's medication for Knipple, and Collins's lack of cooperation during Lewis's visit was sufficient to lead them to reasonably believe that Campbell was in need of immediate aid.

Invoking the Fourteenth Amendment, Collins argues that her grandmother's removal was an unconstitutional disruption of family integrity. Although parents and children have a recognized liberty interest in the "care and companionship of each other," the present case presents novel facts. Myers v. Norris, 810 F.2d 1437, 1462 (8th Cir. 1987). We have held that child abuse investigators who have otherwise disrupted family integrity nevertheless are entitled to qualified immunity if their actions are properly founded upon a reasonable suspicion of child abuse. See Manzano v. South Dakota Dept. of Soc. Serv., 60 F.3d 505, 511 (8th Cir. 1995); Myers, 810 F.2d at 1463. Assuming that the removal of Campbell from her home implicates the Fourteenth Amendment, we conclude that the information available to the defendants was more than sufficient to support a reasonable suspicion that Campbell's health was in jeopardy.

**B.**

Collins alleges that Knipple, Bellinghausen, Lewis, and Comstock violated her constitutional rights when they participated in the initiation of emergency commitment proceedings against her. At the time of Collins's commitment, it was clearly established that liberty from bodily restraint is protected by the Due Process Clause of the Fourteenth Amendment. See Heidemann, 84 F.3d at 1028 (citing Youngberg v. Romeo, 457 U.S. 307, 316 (1982). This liberty interest is implicated in involuntary commitment proceedings. See id. Collins contends that Iowa Code § 229.11 imposes the additional standard of probable cause. Whatever the requirements of Iowa law, they are irrelevant to the issues in this case, for "a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir.1993). See also Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1457 (8th Cir. 1996). Rather, our inquiry "generally turns on the 'objective legal reasonableness' of the action." Anderson, 483 U.S. at 639 (quoting Harlow, 457 U.S. at 818-19).

Considering the facts in a light most favorable to Collins, we conclude that a reasonable person could have believed that Collins would constitute a danger to Campbell or herself if she were allowed to remain at liberty. The appellants' actions were reasonable given their knowledge that Collins had removed her grandmother from Shady Oaks under a pretext and without consulting with the medical staff, had violently resisted Campbell's removal from the home, and had generally behaved in a way that would lead the appellants to believe that she would again attempt to remove her grandmother from a treatment facility. On these facts, the defendants are entitled to qualified immunity.

## C.

Collins alleges that Lewis, acting in her capacity as a state abuse investigator, actively assisted Lena Knight in interfering with Collins's visitation rights at the Gowrie Care Center. Considering the evidence in a light most favorable to Collins, however, Lewis's actions involved, at most, a discussion with Knight regarding the possible detrimental effects that Collins's visitation would have on Campbell. Such conduct does not rise to the level of a constitutional violation. See Manzano, 60 F.3d at 512 (no constitutional violation when abuse investigator advised mother to seek protection order separating father from daughter).

## Conclusion

After-acquired information not infrequently casts a different light on a situation in which public officials acted on the basis of their then-available knowledge. Those actions are not to be judged in the light of that after-acquired knowledge, however, and what we recently said in a somewhat similar case bears repeating here: "Public officials facing situations like this must take quick and decisive action to mitigate risks to health and safety. This is precisely the kind of good faith discretionary official action that qualified immunity is intended to protect." King v. Beavers, No. 97-3295, slip op. at 9 (8th Cir. July 9, 1998).

The order denying Knipple, Bellinghausen, Lewis, Willis, and Comstock summary judgment is reversed, and the case is remanded to the district court with instructions to grant summary judgment in their favor.[4]

---

[4]We express our appreciation to appointed counsel for his efforts on Collins's behalf.

-11-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.