60 F.3d 487
 Gerry D. REECE, Appellee,
v.
Michael GROOSE, James Eberle, Delores Phillips, Charles
Verdugo, John Motel, Gerald Bommel, Henry Jackson,
Daniel Kempker, and Jack Kirk, Appellants.
 No. 94-2165.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 10, 1995.
Decided July 20, 1995.
 
 Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, MO, argued, for appellant.
 Patrick J. Gregory, Overland Park, KS, argued, for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, BRIGHT, Senior Circuit Judge, and MURPHY, Circuit Judge.
 RICHARD S. ARNOLD, Chief Judge.
 
 
 1
 Gerry Reece, an inmate at the Jefferson City Correctional Center, filed this lawsuit under 42 U.S.C. Sec. 1983 against the defendants, all officers and employees of the Missouri Penal System. Reece alleges that all of the defendants except for Charles Verdugo failed to protect him from a substantial risk of serious harm in violation of the Eighth Amendment. Reece alleges that Charles Verdugo violated the Eighth Amendment by being deliberately indifferent to a serious medical need. In the District Court,[1] the defendants moved for summary judgment on, among other things, qualified-immunity grounds. That motion was denied, and this interlocutory appeal followed. We affirm.
 
 I.
 
 2
 This lawsuit grew out of an assault on Reece while he was in administrative segregation for his own protection. That the assault occurred is not the question before us; the defendants' responsibility for it is. At this preliminary stage of the proceedings, we view the facts in the light most favorable to Reece, Wright v. South Arkansas Regional Health Center, Inc., 800 F.2d 199, 203 (8th Cir.1986), and recite them now accordingly.
 
 
 3
 Before entering prison, Reece had been an informant for the Drug Enforcement Administration and had testified against Nick Nodine in Nodine's 1989 murder trial. Because of these activities, Reece's fellow prisoners considered him a "snitch," thus placing him at substantial risk of injury at their hands. Because of this risk, Reece was placed in administrative segregation for his own protection.
 
 
 4
 On November 23, 1992, an inmate named Albert Davis assaulted Reece by throwing hot water on him. Davis was, at the time, a "walkman" in the administrative-segregation unit. Walkmen are inmates charged with duties such as sweeping the walk in a unit of the prison. They are the only inmates who have access to inmates in administrative segregation. Walkman Davis's conduct record prior to this assault listed numerous violations, including threats, destroying property, possessing dangerous contraband, creating a disturbance, and insulting behavior.
 
 
 5
 Following this assault, Reece could not get anyone's attention, so he set some paper on fire outside his cell. Officer Charles Verdugo noticed the smoke, came to Reece's cell, and extinguished the fire. Reece told Verdugo that he needed medical attention, but Verdugo, who says he believed that Reece had no injuries, refused. Within two hours, however, Reece did receive treatment. Medical personnel found that Reece had no first-degree burns and treated him with an ointment. There is no indication that the delay aggravated his condition.
 
 II.
 
 6
 We first address the issue of our jurisdiction. The denial of a motion for summary judgment based on qualified immunity is immediately appealable. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Reece asserts, however, that the defendants are going beyond their qualified-immunity defense and are reasserting their summary-judgment argument that there is no genuine issue of fact for the jury. We hold that we have jurisdiction to hear the appeal.
 
 
 7
 It is instructive to define the jurisdictional line drawn by the Supreme Court in two separate cases. In Swint v. Chambers County Commission, --- U.S. ----, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), the plaintiff sued individual deputies, the county sheriff, and the county for civil-rights violations. The individual defendants moved for summary judgment based on qualified immunity. The county also moved for summary judgment, arguing that the sheriff was not a policy-maker for the county. Both motions were denied by the District Court, and an immediate appeal was taken to the Eleventh Circuit, where that Court addressed not only the qualified-immunity issue, but also the policy-maker issue.
 
 
 8
 The Eleventh Circuit relied on "pendent-party" appellate jurisdiction in order to address the policy-maker issue. The Supreme Court held that no such jurisdiction exists. Therefore, the Court of Appeals had no jurisdiction to hear the appeal. Notably, the pendent issue, whether the sheriff was a policy-maker for the county, was separate and distinct from the qualified-immunity issue, whether the law that the individual defendants were alleged to have violated was clearly established.
 
 
 9
 On the other side of the line is Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). There, following a warrantless search by the defendant, Anderson, the plaintiffs sued, alleging a violation of their Fourth Amendment right to be free from unreasonable searches. The District Court granted Anderson's motion for summary judgment, but this Court reversed, holding that there was a question of fact as to whether the warrantless search was supported by probable cause and exigent circumstances. We also held that Anderson was not entitled to qualified immunity, because the right allegedly violated, freedom from unreasonable searches, was clearly established.
 
 
 10
 The Supreme Court reversed, holding that the standard we employed was too narrow. The "relevant question" for qualified-immunity purposes was not whether the right to be free from unreasonable searches was clearly established, but rather "whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." Id. at 641, 107 S.Ct. at 3040. Thus, in this sort of case, the qualified-immunity standard not only requires courts of appeals to examine what law is clearly established, but also "require[s] an examination of the information possessed by" government officials accused of violating that law. Ibid.
 
 
 11
 The Supreme Court has thus delineated our jurisdiction in qualified-immunity cases. If, as in Swint, a party asks us, in an interlocutory appeal, to examine a question that is separate and distinct from the qualified-immunity issue, we must dismiss the appeal for want of jurisdiction. If, on the other hand, the party asserting qualified immunity asks us to examine the facts as they were known to the government official in order to determine whether clearly established law would be violated by his actions, Anderson requires that we accept jurisdiction and address their arguments.
 
 
 12
 We believe this holding is consistent with the Supreme Court's latest opinion on the subject, Johnson v. Jones, --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). That was an action against five police officers claiming that they had beaten the plaintiff during an arrest. Three of the defendant officers moved for summary judgment on the ground that there was no evidence that they had beaten the plaintiff, or that they had been present while others did so. The District Court denied their motion, and the officers appealed. The Court of Appeals dismissed the appeal for want of jurisdiction, and the Supreme Court agreed. The case was a qualified-immunity case, in the sense that the officers were entitled to assert this defense, but the issue they pressed on appeal was simply one of sufficiency of the evidence. Such a question is conceptually distinct from the legal question, raised by the qualified-immunity defense, whether the defendants' conduct violated law that was clearly established at the time.
 
 
 13
 To be sure, the issue raised by the present appeal--whether reasonable officers would have done more to protect Reece after placing him in administrative segregation--is fact-intensive. Parts of the Supreme Court's opinion in Johnson can be read to prohibit the exercise of appellate jurisdiction over such issues on a pretrial appeal. The Court says, for example, that a number of considerations "argue in favor of limiting interlocutory appeals of 'qualified immunity' matters to cases presenting more abstract issues of law." --- U.S. at ----, 115 S.Ct. at 2158. " '[I]mmunity appeals ... interfere less with the final judgment rule if they [are] limited to cases presenting neat abstract issues of law.' " Ibid., quoting 15A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure Sec. 3914.10, at 664 (1992).
 
 
 14
 The issue we are asked to decide on this appeal can hardly be categorized as "neat" or "abstract." It is unquestionably fact-intensive. We believe nevertheless that we have jurisdiction to decide it, because, by analogy to Anderson v. Creighton, supra, the legal question of qualified immunity is itself fact-intensive. As we have explained, Anderson holds that an officer has qualified immunity if he or she reasonably believed, in the light of all facts known at the time, that a warrantless search would be valid. So here, we think the defendants in this case would have qualified immunity if, in the light of all facts known at the time, they reasonably believed that they had taken proper measures to protect the plaintiff. The Supreme Court's opinion in Johnson does not cite Anderson v. Creighton, so we cannot know for sure what view of appellate jurisdiction the Court would take in a case like the one before us. We think the safer course is to apply the root principle that denials of qualified immunity are immediately appealable, and to apply this principle even in cases where the issue of qualified immunity is itself fact-intensive.
 
 
 15
 If we are wrong about this, and if in fact Johnson requires us to dismiss this appeal, the result, of course, would be that the case would go to trial. Because we are affirming the District Court's denial of qualified immunity, precisely the same result will be produced by our disposition, at least as to those defendants who are sued on the basis of their alleged failure to protect the plaintiff against assault. Practical considerations such as this, we suppose, may be out of bounds when discussing jurisdictional issues, but the thought that our holding in favor of jurisdiction, even if wrong, will cause no harm to the parties in this particular case does afford us some consolation.
 
 
 16
 In short, we think this case lies squarely within the Anderson mandate. In order to prevail, Reece must establish that the defendants denied him "humane conditions of confinement" by showing that the defendants knew that Reece "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, --- U.S. ----, ----, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994). The defendants, in turn, may assert in this appeal that, in light of the facts known to them at the time, Reece faced no substantial risk of serious harm, the officers did not know of the risk, or that the measures taken were reasonable. This Eighth Amendment calculus is directly analogous to the Fourth Amendment analysis required by the Supreme Court in Anderson. Once again, however, we view the "information possessed" by the defendants in the light most favorable to Reece.III.
 
 
 17
 Having accepted jurisdiction of the claim relating to the assault on Reece, we now examine whether the defendants are immune from suit. Qualified immunity shields government officials from civil lawsuits when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). But as the previous discussion makes clear, we must do more than determine that the law was "clearly established" in the abstract; we must ask whether that law could have been violated given the information available to the defendants at the time.
 
 
 18
 " '[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.' " Farmer, --- U.S. at ----, 114 S.Ct. at 1976 (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.), cert. denied, 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988)). As previously stated, this duty requires prison officials to take reasonable measures to abate substantial risks of serious harm, of which the officials are aware. Id. --- U.S. at ----, 114 S.Ct. at 1984. That is the "clearly established constitutional right" in this case.
 
 
 19
 As for the fact-based portion of our inquiry, the substantial risk of serious harm that Reece faced appears to be obvious in the circumstances of this case. Reece was a "snitch," and had testified for the prosecution in a murder trial, facts known to the prison population as well as prison officials. Indeed, Reece was in administrative segregation, a form of protective custody, because of this risk. As Farmer counsels, "a factfinder may conclude that a prison official knew of a substantial risk from the fact that the risk was obvious." --- U.S. at ----, 114 S.Ct. at 1981. A factfinder could so conclude in this case.
 
 
 20
 Likewise, Reece has produced enough evidence to question whether the measures taken to abate the risk to him were reasonable. The move to administrative segregation was an apparently reasonable response. However, while in administrative segregation, Reece was exposed to Davis. A factfinder viewing Davis's record could reasonably conclude that Davis had a propensity for violence, that the defendants knew of this propensity because it was reflected by his prison record, and that exposing Reece to such a prisoner, even in administrative segregation, was unreasonable, in light of the pervasive risk to Reece. That is enough to defeat the qualified-immunity defense.
 
 
 21
 Finally, we address the allegation that Verdugo deprived Reece of his right to prompt, adequate medical care. Reece must establish that the harm allegedly done is " 'objectively, sufficiently serious,' " and that " 'a prison official [was], as a subjective state of mind, deliberately indifferent to the prisoner's' " condition. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir.1995) (quoting Farmer, --- U.S. at ----, 114 S.Ct. at 1977).
 
 
 22
 In Beyerbach, an inmate's hand was broken when it was caught in a cell door. Two to three hours passed before medical assistance was provided, two hours passed before ice that was ordered for the hand arrived, and 17 hours passed between the time x-rays were ordered and the time they were taken. The inmate alleged that each of these delays was an Eighth Amendment violation. We held, however, that, even though a broken hand was a sufficiently serious injury, an inmate who claims that delay in medical treatment rose to the level of a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. The inmate's suit failed because he had not presented any "verifying medical evidence ... that defendants ignored an acute or escalating situation or that delays adversely affected his prognosis." Beyerbach, 49 F.3d at 1326 (internal quotations and citations omitted).
 
 
 23
 In this case, Reece does no more than make the assertion that Verdugo refused to get treatment for him. Just as in Beyerbach, he does not produce any "verifying medical evidence" that the delay had any "detrimental effect" on his condition. This point, however, goes to the objective component of the alleged medical-needs violation of the Eighth Amendment. It has nothing to do with the knowledge or lack thereof of the defendant Verdugo. The issue is entirely distinct from what Verdugo knew or should have known at the relevant time. Accordingly, under Swint, we believe we lack jurisdiction to decide this argument. We recognize that in Beyerbach we held that just this sort of question was within our appellate jurisdiction on appeal from denial of a motion for summary judgment based on qualified immunity, but that holding is no longer good law in light of Johnson v. Jones, supra, in which the Supreme Court held that fact-based issues distinct from the question of qualified immunity are not within the appellate jurisdiction created by cases such as Mitchell v. Forsyth, supra.
 
 
 24
 The defendant Verdugo also urges, in support of his appeal, that he did not know that Reece had been seriously burned. If this is true, he could not have been deliberately indifferent to Reece's serious medical needs, and there would be no Eighth Amendment violation. By a parity of reasoning with Anderson and the portion of this opinion that deals with Reece's claim based on the assault by Davis, we have jurisdiction to decide this argument. We agree with the District Court that there was an issue of fact as to the seriousness of Reece's injuries. Reece produced testimony from an acquaintance who saw him after the incident which, if believed, would justify a jury in finding that he was seriously burned. This finding, in turn, could be the basis for a reasonable inference that Verdugo knew the burns were serious. Therefore, we agree that the District Court properly denied Verdugo's summary-judgment motion based on the defense of qualified immunity, and we affirm the District Court's order. This does not necessarily mean, however, that the claim against Verdugo will go to trial. On remand, Verdugo will be free to make another motion for summary judgment, this one based simply on the absence of any genuine issue of material fact. In support of this motion, Verdugo can assert that Reece has produced no verifying medical evidence to establish the detrimental effect of delay in medical treatment--an issue not discussed in the opinion of the District Court we are now considering. If the motion is granted, judgment will be entered in favor of Verdugo. If the motion is denied, the case against Verdugo will go to trial along with the case against the other defendants.
 
 IV.
 
 25
 The order of the District Court denying qualified immunity to those defendants accused of failing to protect Reece from a substantial risk of serious harm is affirmed. The order denying qualified immunity to Charles Verdugo on the medical-needs claim, which order is based on the presence of a genuine issue of material fact as to whether Verdugo knew that Reece's medical condition was serious, is also affirmed. Insofar as the issue of the effect of the delay in treatment is concerned, our action leaves Verdugo free to assert this defense on remand. The cause is remanded to the District Court for further proceedings consistent with this opinion.
 
 
 26
 It is so ordered.
 
 
 
 [1]
 The Hon. Scott O. Wright, Senior United States District Judge for the Western District of Missouri