# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1322

_____

| | | |
|---|---|---|
| Danny J. Scott, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Robert Carpenter; David Wagner, Lt., | * | |
| Deputy; Mark Petence; Luke Hruby; | * | [UNPUBLISHED] |
| Roy Smith, Waldsmith, Sergeant; | * | |
| Brian Adolph, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted:  November 16, 2001

Filed:  December 11, 2001

_____

Before LOKEN, LAY, and RILEY, Circuit Judges.

_____

PER CURIAM.

Danny J. Scott, a pretrial detainee, brought a § 1983 claim against the county sheriff and the jail administrator alleging deliberate indifference to Scott's serious medical needs and conditions of his confinement.  He brings the claim under the Eighth and Fourteenth Amendments.  Magistrate Judge Celeste F. Bremer made thorough fact findings in an excellent sixteen-page opinion, denied his claim, and entered judgment for the defendants.  We affirm.

Scott was incarcerated at the county jail in Johnson County, Iowa, as a pretrial detainee from September 1997 until March 1998. He weighed between 350 and 385 pounds. His left leg is amputated below the knee. He suffers from diabetes and a chronic ulcer on his right leg.

Scott alleges he only showered fifteen times during his six month incarceration, while published jail policies mandate that prisoners shower at least once every three days. He contends his inability to bathe constituted deliberate indifference to his hygiene needs on the part of defendants; he also asserts a related claim, deliberate indifference to his medical needs, arising from a leg infection he suffered near the end of his incarceration.

It is undisputed that the jail in Johnson County lacks handicapped accessible showering facilities. It also is undisputed that, because of Scott's size and disability, he was unable to use showering facilities in his cellblock. When Scott did shower, officials took him to the larger shower in the jail's booking room. This facility also lacked handrails, and officials provided Scott with a chair on which to sit or lean.

The magistrate judge found that jail officials also provided other means for Scott to keep himself clean. Each cell was equipped with soap, running water, wash cloths, and towels. Officials provided Scott with a wash basin he could use to bathe himself in his cell and a small plastic wastebasket, purchased new, to allow Scott to soak his stump. However, jail records reflect that Scott rarely, if ever, took advantage of these alternatives. For example, it appears he requested the opportunity to bathe himself in his cell only once.

On September 5, 1997, the day after Scott was incarcerated, he was taken to the University of Iowa Hospitals and Clinics where he was diagnosed with superficial cellulitis, a bacterial infection of the skin and subcutaneous tissue marked by discomfort and redness, swelling, and warmth of the infected area. Scott was released

to custody of the jail and prescribed antibiotics. Apparently these were effective. Subsequent doctors over the next several months found Scott's legs free from infection despite his frequent complaints.

On January 24, 1998, Scott again complained of infection. Officials took him to the hospital where he was diagnosed with cellulitis in his right leg. He was hospitalized for five days and received antibiotics.

On February 16, 1998, Scott again complained of infection in his legs. He was not taken to the hospital immediately because he had a scheduled appointment for February 19. It is unclear from the record whether this decision was made by Scott or jail officials. At that appointment, Scott was diagnosed with an abscess on his left knee. That infection was incised and drained the next day. Scott remained hospitalized for approximately two weeks and then was released to home arrest. In all, officials took Scott to the hospital on twelve separate occasions during his incarceration and he spent nineteen nights in a hospital bed.

## Discussion

A prison official can only be held to have violated the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the official must be deliberately indifferent to the prisoner's health. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Reece v. Groose, 60 F.3d 487, 491 (8th Cir. 1995). As to both of Scott's claims, there is no dispute that the first requirement is met. Defendants concede the risk of infection was objectively serious. They also agree that basic personal hygiene falls within "the minimal civilized measure of life's necessities" to which a prisoner is entitled. See Farmer, 511 U.S. at 834 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Rather, defendants limit argument on both issues to their subjective state of mind.

## A. Deliberate Indifference to Hygiene Needs

Scott asserts a number of facts in support of his position. He notes he received only fifteen showers over six months, stating he once went twenty-eight days without.[1] He contends he initially requested showers, but these requests were refused by jail officials. This, he asserts, eventually caused him to give up making further requests. Even when he was allowed to shower, he claims, he had to drag himself across the floor before he could reach the stall.

He also disputes defendants' assertions that alternative means were available to clean himself. He claims he could not fill the provided basin with water and the wastebasket provided for him to soak his leg was unsanitary. In any event, he contends, these alternatives do not trump the jail's policy that prisoners receive showers at least every three days. Similarly, he contends that regardless of these alternative means, society's "evolving standards of decency" mandate regular showers, not sponge baths.

Defendants assert Scott bore more responsibility for his own hygiene than he admits. They state that jail policies place ultimate responsibility for cleanliness on the individual detainee. Each cell has soap, water, wash cloths, and towels. They state they twice told Scott that a shower or warm water for his basin would be provided on his request. Contrary to Scott's allegations, they state that Scott rarely requested the opportunity to bathe and there is no evidence he was ever refused or interfered with in such a request. <u>See</u> Opinion and Judgment (Dec. 6, 2000) at 10 ("Nothing in the record indicates that he asked for showers on a regular basis. . . . No evidence suggests that either Defendant ever denied or interfered with Scott's request for hygiene supplies or a shower."). They assert that accommodating Scott's requests and providing alternative means to wash in light of Scott's special circumstances falls

---

[1]Magistrate Judge Bremer states that the longest period was eighteen days.

far short of the "wantonness" required to prove a constitutional violation. Moreover, to the extent our "evolving standards of decency" allow officials to require prisoners to take some responsibility for their own hygiene, officials do not violate those standards by giving prisoners access to bathing facilities and responding to their requests rather than taking affirmative steps.

We hold the magistrate judge did not err in finding defendants were not deliberately indifferent to Scott's hygiene needs. Indeed, fifteen showers in six months plus the unavailability of handicapped accessible facilities raises some red flags, and we agree with Magistrate Judge Bremer's assessment that defendants could and probably should have done more to accommodate Scott's special needs. However, we agree with defendants that prisoners can be expected to bear some responsibility for their own hygiene. An Eighth Amendment violation requires a jailer to deprive a prisoner of a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294, 304 (1991). The magistrate judge found that defendants offered Scott showers or warm water for sponge baths at his request and never interfered with his requests, but Scott rarely asked. Under those circumstances, it is difficult to see how he was deprived by any other than his own choice. Under the totality of the circumstances, see Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989), we hold that Magistrate Judge Bremer was not clearly erroneous in finding defendants did not wantonly deprive Scott of his basic needs. See Farmer, 511 U.S. at 834.

## B. Deliberate Indifference to Medical Needs

Scott asserts the poor hygiene imposed upon him by defendants caused the infections which required hospitalization and, in one case, surgery. He also asserts defendants were aware of the "substantial risk of serious harm," Farmer, 511 U.S. at 842, these infections posed. According to Scott, defendants knew he had been hospitalized for leg infections. They also knew he had not bathed regularly and that poor hygiene promotes infection. More specifically, defendants knew Scott was

running a fever prior to February 16, 1998, one possible cause of which was his body fighting infection. Nonetheless, defendants refused Scott's requests for medical treatment for three days because he already had a regularly scheduled appointment with his doctor.

Defendants dispute Scott's assertion that they were aware of any serious risk of substantial harm to Scott's health. They assert the proper standard is whether they unnecessarily and wantonly inflicted pain, see Wilson, 501 U.S. at 297, and they argue that they did not. They assert there is no evidence in jail or hospital records that jail officials ever neglected to follow physician or hospital instructions pertaining to Scott. Likewise, the court found that rather than ignoring Scott's frequent complaints, they took him to the hospital twelve times during his incarceration. Moreover, Scott had "cried wolf" several times, telling officials he had an infection when doctors could find none. The court held in response to this observation, "[i]f doctors could not diagnose a serious medical need requiring treatment, then the Court declines to hold that a reasonable layperson such as a jail employee should have done so." Opinion and Judgment (Dec. 6, 2000) at 14 (citing Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995)).

We hold the magistrate judge did not err in finding that defendants were not aware of a serious risk of harm and did not deliberately ignore risks to Scott's health. Officials regularly took Scott to the hospital in response to his complaints. The final instance followed a period of months where doctors had repeatedly found no infection in response to Scott's complaints. Under the circumstances, waiting three days for Scott's appointment with his physician did not amount to deliberate indifference.

The judgment of the district court is AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.