# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1843

_____

| | | |
|---|---|---|
| Gary Pagels, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Chris Morrison, individually and in his | * | |
| official capacity as a caseworker for | * | |
| the Moberly Correctional Center, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Dean Minor, individually and in his | * | Appeal from the United States |
| official capacity as functional unit | * | District Court for the |
| manager for the Moberly Correctional | * | Eastern District of Missouri. |
| Center, | * | |
| | * | |
| Defendant - Appellant, | * | |
| | * | |
| Teresa Thornburg, individually and in | * | |
| her official capacity as associate | * | |
| superintendent of the Moberly | * | |
| Correctional Center; James A. | * | |
| Gammon, individually and in his | * | |
| official capacity as Superintendent of | * | |
| the Moberly Correctional Center; | * | |
| John Doe, individually and in his/her | * | |
| official capacity as supervisor of | * | |
| medical services of the Moberly | * | |
| Correctional Center; Richard Roe, | * | |
| individually and in his/her official | * | |

capacity as plaintiff's treating     *
physician(s) at the Moberly     *
Correctional Center,     *
    *
       Defendants.     *

_____

Submitted: March 13, 2003

Filed: July 9, 2003 (corrected 7/14/03)
_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.
_____

BOWMAN, Circuit Judge.

Dean Minor, a functional unit manager at Moberly Correctional Center (MCC) in Moberly, Missouri, appeals the District Court's denial of his motion for summary judgment on the basis of qualified immunity[1] in a 42 U.S.C. § 1983 suit for damages filed against him by Dale Crews.[2] We reverse.

I.

We state the facts in the light most favorable to Crews, who opposed Minor's motion for summary judgment. This suit arises out of a near-deadly assault on Crews

_____

[1]This interlocutory appeal is properly before us because Minor is appealing the denial of a summary judgment motion in which he asserted a qualified immunity defense. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).

[2]Crews is now dead, and we have granted a motion to substitute Gary Pagels, the administrator of Crews' estate, as the appellee in this action. Because of the original caption in this case and for the sake of clarity, we will refer to the appellee as Crews.

by two fellow MCC inmates, John Dieumegarde, Crews' cellmate, and Timothy Shane, on August 30, 1996.[3] In his complaint, Crews alleges that Minor and other prison officials violated his Eighth Amendment rights by failing to protect him from this assault. At the time of the assault, Crews was incarcerated in Housing Unit 2B, a protective custody unit at MCC. Crews was in this unit because other inmates had been making threats on his life.

On August 25, 1996, Crews wrote a letter to the caseworker for his unit. Crews slipped the letter under the door of Chris Morrison, a corrections classification assistant in the protective custody unit, who Crews incorrectly believed was a caseworker. Morrison received the letter the following day. In the letter, Crews stated he was having problems with Dieumegarde and Shane, Dieumegarde's "gangster-idol-partner." Aug. 25, 1996, letter from Crews (Crews Letter) at 1. Crews explained that Shane was threatening to "fuck me up" and yelling up to Crews' cell because Crews had refused to allow Dieumegarde to continue to use his television and stereo. Id. Crews also stated he told Dieumegarde that he could not keep a hand-cuff key and tattoo gun in their cell, which Shane had given to Dieumegarde for safekeeping. Crews claimed Dieumegarde and Shane were planning to escape and he wanted the caseworker to know that he had "nothing to do" with those items. Id. at 2. Crews further stated that he wanted the caseworker to know that if a fight broke out with Shane, Crews was not the aggressor. Although Crews noted that "[i]t's kind of obvious that me and Dieumegarde don't need to be in the same room[,]" he stated that he was "not worried about getting beat up or anything like that. I'm just covering my butt like before." Id. at 2–3.

---

[3]During oral argument before this court, counsel for the appellant stated that Crews' death was unrelated to the injuries he sustained during the August 30, 1996, assault at MCC.

After reading the letter, Morrison recommended to Corderman, the housing unit sergeant, that Crews be placed in temporary administrative segregation, and that both cells be searched. Morrison then met with Minor about the situation. Minor reviewed the letter and ordered Morrison and Corderman to conduct a search of the cells and to talk to Crews about the letter. Correctional officers searched both cells that day. Following the search, Crews expressed concern for his safety to Morrison. Crews was not transferred to a different cell and, out of concern for his own safety, he remained in his cell for several days following the search. Four days after the search, Crews was assaulted in his cell by Dieumegarde and Shane. The near-deadly assault occurred during dinnertime, when the cells were automatically left open.

During his deposition, Minor testified that he knew Dieumegarde and Shane had been so-called partners in crime and that they had previously attempted to escape from MCC and other prisons. He stated that he knew Teresa Thornburg, assistant superintendent at MCC, had directed, because of prior joint escape attempts, that Dieumegarde and Shane not be placed in proximity to each other.[4] Minor also testified that the potential for a fight between Shane, Dieumegarde and Crews did not "overly concern" him because Crews' allegation "is a common statement that we hear from inmates who are trying to arrange a room move." Minor Dep. at 72.

Crews filed this § 1983 suit in 1997 against Minor, Morrison, Thornburg, and James Gammon (the superintendent of MCC). In January 2001, the defendants filed a motion for summary judgment on the basis of qualified immunity. The District

---

[4]The record does not specifically support Crews' claim that Minor knew, two months prior to the assault, that Shane had told a corrections officer he was going to stab someone when he got out of administrative segregation. See Appellee's Brief at ix. Rather, Minor testified that he should have received a copy of this report, but he could not remember whether he actually saw it. Deposition of Dean M. Minor (Minor Dep.) at 87–88.

Court granted the motion as to Gammon and Thornburg, but denied it as to Minor and Morrison. Minor now appeals that ruling.

## II.

Whether a defendant is entitled to qualified immunity is a question of law which we review de novo. Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998). Qualified immunity shields a government official from suit in his performance of a discretionary function unless that official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has held that the Eighth Amendment requires prison officials to take "reasonable measures to guarantee the safety of inmates [and] . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted).

In this case, for Crews to prevail on his Eighth Amendment failure-to-protect claim, he must show: (1) that his continued incarceration in the protective custody unit with Shane and Dieumegarde posed a substantial risk of serious harm, and (2) Minor knew of and disregarded an excessive risk to Crews' safety. See Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir. 1996) (citing Farmer, 511 U.S. at 834–37; see also Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996) (noting a failure-to-protect claim "contains two components: 1) an objectively serious deprivation; and 2) a subjectively culpable state of mind" (citing Farmer, 511 U.S. at 834–37)). For purposes of this appeal, we assume that Crews' continued incarceration with Dieumegarde and Shane posed a substantial risk of serious harm to Crews. Thus, the central issue before us is whether Crews established the second component of his

failure-to-protect claim, i.e., that Minor knew of and acted with deliberate indifference to Crews' safety.

To satisfy the second component of this claim, Minor "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. In short, Crews must show that Minor acted, or failed to act, with "deliberate indifference" to the safety of Crews. Id. Negligence on the part of Minor is not sufficient to establish that he acted with deliberate indifference. See Jackson, 140 F.3d at 1152; Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998). For Minor to act with deliberate indifference, he must have recklessly disregarded a known, excessive risk of serious harm to Crews' safety. See Jackson, 140 F.3d at 1152.

Here, the District Court rejected Minor's qualified immunity defense on the basis that Minor was deliberately indifferent to a substantial risk of harm to Crews. The District Court's conclusion that Minor was aware of the risk hinges on three findings: (1) that Minor, by reviewing the August 25 letter, was aware of the threats against Crews, (2) that he returned Crews to his cell after the search despite his own concerns about Crews' safety, and (3) that he knew Dieumegarde and Shane had a propensity for violent behavior. After a careful review of the record, we conclude that Minor did not have actual knowledge of a credible threat of serious harm to Crews.

To begin with, we do not think Crews' August 25 letter establishes that Minor had actual knowledge of a threat of serious harm to Crews. While Crews' letter mentions threats made by Shane, Crews stated that his objectives in writing the letter were to disavow ownership of the contraband in the cell, and to establish the fact that if a fight broke out with Shane, he was not the aggressor. Crews expressly stated in the letter that he was "not worried about getting beat up or anything like that." Crews Letter at 3. As we have previously observed, "threats between inmates are common

-6-

and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." Jackson, 140 F.3d at 1152 (quoting Prater, 89 F.3d at 541). In his deposition, Minor testified that he was not seriously concerned about a fight and that Crews' allegations were common to "inmates who are trying to arrange a room move." Minor Dep. at 72. Minor also testified that he understood Crews did not want to be removed from his cell after the search. Id. at 73, 85–86. Read in its entirety, including Crews' statement that he did not fear for his own safety, we do not think Crews' letter provides a sufficient basis to conclude that Minor had actual knowledge of a threat of serious harm to Crews.

Similarly, we do not believe the subsequent search of the cells demonstrates Minor's actual knowledge of a threat of serious harm to Crews. While Minor ordered the search of the cells, he testified that the potential for a fight did not "overly concern" him. Id. at 72. Contrary to Crews' assertions in his appellee brief, we do not think the record supports his claim that Minor knew the cell search would result in labeling Crews a snitch. Although Minor indicated he had "some concerns" about placing Crews back in the same cell, id. at 97, he did not state what those concerns were and he testified that, to his knowledge, the investigation did not reveal any further danger to Crews.[5] Id. at 97–99. In addition, Minor testified that Morrison did

---

[5]Crews' reliance on Reece v. Groose, 60 F.3d 487, 491 (8th Cir. 1995), fails to support his claim that he was a known "snitch" at risk of serious harm. In Reece, the risk of harm the plaintiff faced resulted from the same circumstances that led to that prisoner's assignment to administrative segregation. Id. at 491. In particular, the plaintiff was segregated because other inmates knew he testified for the prosecution in a murder trial. Id. By contrast, Crews' initial assignment to the protective custody unit was based on calls two inmates made to his mother, and Crews' mother's concern that he "would do something to get [him]self in more trouble" because he was "very angry" about these calls. Deposition of Dale Crews (Crews Dep.) at 10. Crews further testified that Shane and Dieumegarde were not involved in any of the problems that led to his initial assignment to the protective custody unit. Id. at 12.

not tell him about any other threats made by Shane and Dieumegarde following the search of the cells. Id. at 73.

Further, the record is devoid of any evidence that Minor knew Dieumegarde and Shane had a propensity for violent behavior. Crews asserts the record supports such a finding because Minor testified that he was aware Dieumegarde and Shane were codefendants in the case that resulted in their twenty-year incarceration, because he knew they had attempted to escape from MCC and other prisons and were ordered to be segregated at MCC, and because their classification files indicate a propensity for violent behavior. Minor's deposition testimony, however, contradicts that conclusion. Minor stated that he "was aware that Shane and Dieumegarde had been involved together in a number of different things. To my knowledge violent activity generally was not part of it . . . as far as violent activity, I don't recall a history of violent activity together." Minor Dep. at 77–78. Moreover, Crews did not offer any evidence that Dieumegarde and Shane's convictions involved violent crimes. In addition, the evidence indicates that Shane and Dieumegarde were ordered to be segregated because of their history of joint-escape attempts, not for violent behavior directed at fellow inmates. See Deposition of Teresa Thornburg at 70–74. Finally, even if relevant, there is no evidence in the record that Minor consulted the classification files for Shane and Dieumegarde in making his decisions. See Minor Dep. at 82.

Not only is the evidence insufficient to show that Minor was actually aware of a serious risk of harm to Crews, but based on what Minor did know he responded in an objectively reasonable way. See Curry v. Crist, 226 F.3d 974, 978 (8th Cir. 2000). After reviewing Crews' letter and talking to Morrison and Corderman, Minor ordered a search of the cells and instructed Morrison to speak to Crews about the situation. Crews' letter indicates that his main concerns were that he not be blamed for contraband in the cell and that he was not the instigator if a fight broke out with

Shane.  Crews explicitly stated in his letter that he was "not worried about getting beat up or anything like that." Crews Letter at 3.

Crews argues that Minor could have taken further steps to alleviate the risk to Crews, including moving him to another cell and investigating the matter on his own by personally talking to Crews and other inmates. Without question, the assault on Crews was tragic and, in hindsight, it is easy to think of additional steps Minor could have taken that may have prevented the savage beating.  But even if it could be concluded that Minor's conduct was somehow unreasonable, "reasonableness is a negligence standard" and negligence cannot give rise to an Eighth Amendment failure-to-protect claim.  Jackson, 140 F.3d at 1152; see also Farmer, 511 U.S. at 838 (noting "[a]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment"); Liebe, 157 F.3d at 578.

## III.

For the foregoing reasons, we reverse that part of the District Court's order denying Minor qualified immunity, and remand the case for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.