**Loren Glen HUSS, Jr., Plaintiff,**

v.

**Russell ROGERSON, Warden, Greg Ort, Deputy Warden, and David Scurr, Security Director, Defendants.**

No. 4:02–CV–40268.

United States District Court,
S.D. Iowa,
Central (DM) Division.

July 3, 2003.

Order Denying Reconsideration
Aug. 5, 2003.

Loren Glen Huss, Jr., IMCC–Oakdale, Oakdale, IA, Pro se.

Jeffrey M. Lipman, Lipman Law Firm, PC, Des Moines, IA, Patrick E. Ingram, Mears Law Office, Iowa City, IA, for Plaintiff.

Forrest Guddall, Attorney General, Special Litigation Division, Des Moines, IA, for Defendants.

## ORDER

GRITZNER, District Judge.

This matter comes before the court on Defendants' Motion to Dismiss, which the Court treats as a Motion for Summary Judgment, and Plaintiff's Cross Motion for Summary Judgment. The Court held a hearing on these motions on March 17, 2003. All papers have been filed, and the matter is deemed submitted for ruling. For reasons set forth below, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Cross Motion for Summary Judgment in its entirety.

## I. BACKGROUND

In 1983, Plaintiff Loren G. Huss, Jr. ("Huss"), was serving a sentence for second degree robbery and third degree sexual abuse. In his discharge summary from the Patient Program at the Iowa Medical & Classification Center ("IMCC"), the doctors noted that, among other problems, Huss had a history of aggressive sexual behavior (several times resulting in run-ins with law enforcement). At some point between 1983 and 1985, he was released.

In 1986, Huss killed and mutilated his girlfriend. A jury found him guilty of first degree murder. During his incarceration, he was again evaluated, and the doctors believed he had a psychotic episode at the time of the killing. In 2001, the Eighth

Circuit Court of Appeals vacated his conviction and ordered a retrial.

On December 13, 2001, Huss was found not guilty by reason of insanity ("NGRI") by the Honorable Linda R. Reade, who ordered that Huss not be released, in order to determine whether he should be held pursuant to Iowa Rule of Criminal Procedure 21(8).

On March 8, 2002, Judge Robert I. Blink found that Huss was legally mentally ill and dangerous (especially to women) and ordered that Huss be moved to the psychiatric hospital at IMCC. Judge Blink also ordered that the chief medical officer should file reports every 30 days pursuant to Iowa Rule of Criminal Procedure 21(8)(e). Huss was not moved to the hospital unit because, at that time, the hospital was treating three seriously mentally ill female patients, the hospital is an open environment, and the warden did not have the staff to supervise Huss twenty-four hours a day to protect these women. Also, the reports were not made because the State believed Huss could not be evaluated until he was hospitalized.

Between the trial and Judge Blink's order, the State began proceedings to determine whether Huss should be detained as a safekeeper. Safekeepers are those pretrial detainees awaiting trial as a sexually violent predator and, if so found, are consequently civilly committed for treatment pursuant to Iowa Code Chapter 229A ("safekeeper statute"). On February 19, 2003, the Honorable Robert A. Hutchison found there was probable cause to hold Huss as a safekeeper.

The safekeeper statute requires that those awaiting trial be kept in a "secure" facility. Generally, safekeepers were kept in the same conditions at the IMCC as administrative segregation inmates (those convicted prisoners that were segregated from the general population for discipline problems). This unit is also referred to as "Living Unit B". The State does not have a secure, gender-segregated mental health facility. Huss was also held in this facility. Huss was held at the IMCC segregation unit awaiting transfer to the psychiatric hospital for diagnosis and treatment. Huss alleges that at the IMCC segregation unit, he was kept in "solitary confinement" and treated to conditions that either mimicked or were worse than those for prisoners. As Huss was found not guilty by reason of insanity, he was not a prisoner *per se*. He filed a motion to show cause in Polk County District Court. In addition to his complaints about his confinement, Huss seeks damages for the State "illegally" acquiring and keeping records on him for the past 15 years.

The State's non-compliance with Judge Blink's order came for hearing on Huss' rule to show cause on April 29, 2002. At the hearing, Judge Blink found that the State was not in contempt of his order for several reasons. First, the court noted that there are two separate orders creating "an anomalous factual situation", especially since the State does not have gender-segregated facilities, and Huss was found to be dangerous to women. Judge Blink goes on to say that:

> [i]t is abundantly clear that there is reason and rationale for not exposing someone legally found to be dangerous and mentally ill, although in remission, to women when the order that required that type of confinement and treatment is based upon an historical record of violence toward women. The manner in which Mr. Huss was held prior to this Court's finding under 2.22(8) is understandable, because at that point the warden was not aware of what the expert's opinion was with regard to mental illness and dangerousness.

Although the court was concerned that its order was not being upheld, it could not

find that there were less disagreeable alternatives, and thus the court found the State did not act with unreasonable conduct, which in this context meant that there was no finding of deliberate, malicious, willful conduct or that defendants acted with a wanton disregard for the rights of other human beings.

On July 16, 2002, Huss filed this 42 U.S.C. § 1983 action in federal court against Warden Russell E. Rogerson, Deputy Warden Greg Ort, and the Security director, David Scurr (collectively "Defendants"), seeking an order from this Court to move him from solitary confinement and not place him there again without specific approval from a medical doctor. Huss also seeks nominal, compensatory and punitive damages for alleged violations of his constitutional rights based on the conditions of his confinement and denial of medical treatment.

On August 2, 2002, Huss was transferred from IMCC to the Newton Correctional Facility. In its Motion for Sanctions in the 229A proceedings, the State notes that "conditions under which [Huss] was being detained were substantially different and less onerous at Newton than they had been at Oakdale."

On September 3, 2002, Judge Blink again presided over a hearing on the State's continued non-compliance with his March order. At the hearing, Judge Blink again found that the record did not support a finding of contemptuous disobedience. However, as the State had continued admitting women to the psychiatric facility on an emergency basis, the court ordered that as soon as the three women were discharged Huss would be admitted and evaluated. This option would prevent any other women from being admitted during the time Huss was at the facility. On September 17, 2002, Huss was moved to the IMCC psychiatric unit, and evaluated.

In October, the State held a proceeding to determine if Huss should be committed as a sexually violent predator under Iowa law. The State found that Huss is a sexually violent predator. In January, 2003, he was moved to the Civil Commitment Unit for Sex Offenders ("CCUSO") at Oakdale in order to evaluate women that had been waiting for admittance, but he was maintained on the medical out-patient caseload in order to monitor his psychiatric needs.

## II. DISCUSSION

This matter comes before the Court on Defendants' Motion to Dismiss, recharacterized as a Motion for Summary Judgment due to consideration of materials submitted outside the pleadings, and Huss' Cross Motion for Summary Judgment on his claims.

Summary judgment is appropriate only when a party has demonstrated that it is entitled to judgment as a matter of law, with no genuine issues of material fact remaining for trial. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lefler v. Gen. Cas. Co. of Wisc.,* 260 F.3d 942, 944 (8th Cir.2001). Once the movant has demonstrated that no genuine factual dispute stands in the way of a judgment entry, the burden shifts to the resisting party to present specific admissible evidence showing a genuine dispute on the issue, precluding judgment. *City of Mount Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 271–72 (8th Cir.1988).

Further, a successful action pursuant to 42 U.S.C. § 1983 requires that Huss demonstrate by the requisite burden of proof that an individual acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983 (2001); *Shrum v. Kluck,* 249 F.3d 773, 779 (8th Cir.2001).

Defendants move the court to dismiss the case on several grounds: (1) the doctrine of abstention; (2) qualified immunity; and (3) Plaintiff's failure to adequately plead a violation of his constitutional rights. Huss moves the court to grant summary judgment on all his claims.

## A. Abstention.

 Defendants argue that not only is the State of Iowa, by and through the named Defendants in this federal suit, intertwined with those individually named Defendants in this matter, but the gravamen of the complaint, amendment, and request for relief directly interfere with the pending state proceedings. Huss requests the court enter an order barring Iowa from proceeding with the sexually violent predator action or outright dismissal of said action. Defendants argue this violates the comity between the federal court and the State of Iowa, citing *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The "Younger Abstention Doctrine" requires consideration of three factors: (1) whether the action complained of constitutes an ongoing state proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise the constitutional challenge. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

Huss' original federal complaint centered on his denial of admission to the psychiatric hospital at IMCC and the consequent lack of an evaluation pursuant to Iowa R.Crim. P. 2.22(8)(e). This is the same issue raised in Huss' criminal case in state court in which he filed an application for order to show cause why the state should not be held in contempt of court for failure to admit and evaluate him at IMCC. The state court did not find contemptuous disobedience of its earlier order

but ordered the state to move him as soon as the women at the IMCC were discharged. This has now been done. Of central importance to this Court, the state court continues to monitor Huss' place of confinement and health evaluation.

The State also pursued a civil commitment of Huss under the Sexually Violent Predator Act found in Iowa Code Chapter 229A. This trial was held in October, 2002. Defendants argue that Huss' request for destruction of prison files is another collateral attack on the state's sexually violent predator action, for which the Younger Abstention Doctrine also applies. Huss is currently appealing the court's determination to civilly commit him under the safekeeper statute.

There are ongoing state proceedings which implicate important state interests. This Court has no reason to conclude Huss is without adequate opportunity to raise his constitutional challenge in the state court. Thus, with respect to the safekeeper proceedings and ongoing monitoring of his psychiatric evaluations, this Court will abstain.

## B. Qualified Immunity.

 Defendants next argue that since they are entitled to qualified immunity on all other claims, the court should dismiss Huss' case in its entirety. Qualified immunity protects state actors from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Reece v. Groose,* 60 F.3d 487, 491 (8th Cir.1995) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

 When a defendant alleges they are protected by qualified immunity, the court must follow a three-pronged analysis: (1) whether Huss has asserted a violation of a constitutional or statutory right; (2) if so,

whether that right was clearly established at the time of the violation; and (3) whether, given the facts most favorable to Huss, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right. *Yowell v. Combs,* 89 F.3d 542, 544 (8th Cir.1996).

 With respect to the second prong, the court must first determine whether the law that the defendants are accused of having violated was clearly established and then examine the information possessed by the defendants at the time of the alleged violation. *Reece,* 60 F.3d at 489. In *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987), the Supreme Court stated that, in order for a person to have a clearly established right, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Also, if the official can show "extraordinary circumstances" and can demonstrate that the law defining the violation was unknown and unknowable, he will be entitled to immunity for his actions. *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Slone v. Herman,* 983 F.2d 107, 109 (8th Cir.1993). The Court weighs Defendants' qualified immunity request under both claims of constitutional violation.

### 1. Due Process Claim: Conditions of Confinement.

 Huss alleges that Defendants have violated his constitutional right to substantive due process in the way they treated him while in confinement. Specifically, Huss claims that his placement in the segregation unit and other conditions imposed on him were punitive in nature.

 Under the Constitution, a state may not punish a pretrial detainee. *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861,

60 L.Ed.2d 447 (1979). Huss' claims must be analyzed with due regard for the difference in his status and that of an arrestee, a pretrial detainee, or a prisoner. Huss was held at Oakdale after having been found not guilty of murder by reason of insanity, and, thus, he was not a "prisoner" subject to punishment. *Id.,* 441 U.S. at 535, 99 S.Ct. 1861 (holding that due process requires a finding of guilt prior to punishment). The Eighth Amendment provides too little protection to a person whom the state is not allowed to punish; thus, the Court must look to the Fourteenth Amendment due process case law for guidance. *Andrews v. Neer,* 253 F.3d 1052, 1061 (8th Cir.2001).

 Due process protections are violated if the Defendants intended to inflict punishment upon Huss. *Bell,* 441 U.S. at 538–39, 99 S.Ct. 1861. *Green v. Baron,* 879 F.2d 305, 309 (8th Cir.1989); *see Johnson-El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir.1989). In the absence of expressed intent, intent is inferred if a particular condition or restriction of confinement is not reasonably related to a legitimate governmental purpose, *Bell,* 441 U.S. at 538, 99 S.Ct. 1861; or, intent can be inferred if the conditions are reasonably related to a legitimate purpose but excessive in relation to that purpose. *Id.* Thus, the contours of his constitutional right to avoid punishment were clear at the time he was confined.

 Next, the Court's inquiry turns on the objective legal reasonableness of the state actor's actions. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, the case turns on whether Huss provided sufficient evidence to create a material issue of fact as to whether the conditions Defendants placed him in were unreasonable under the circumstances.

Huss complains that if the conditions under which he was held were the same conditions as inmates in punitive segregation, then the intent was to punish. He alleges that Defendants willfully violated a court order and held him in punitive conditions despite a court order that he be held in a mental hospital—repeatedly violating his due process rights. After the court found that Huss should be held at the hospital, he was transferred to Living Unit B at IMCC, where he was not allowed to wear his own clothes, was held in a single cell for up to 23 hours a day, and his property rights were restricted. Also, the light was on 24 hours a day in his cell, although dimmed at night. Due process requires that the conditions and duration of confinement bear some reasonable relation to the purpose for which persons are committed.

There is no dispute that the State of Iowa was entitled to hold Huss in custody. His confinement in a state institution raised concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations. *See Andrews*, 253 F.3d at 1061 (holding that claims of excessive force of person held in custody after NGRI finding should be evaluated under objective reasonableness standard usually applied to pretrial detainees).

Defendants contend, however, that there were no other resources available at the time. Living Unit B was chosen to house the safekeepers because it was not the dormitory-style setting that would lead to a mix between prison inmates and safekeepers. Defendants also contend that personal property restrictions, constant lighting, and keeping safekeepers in their cells for 23 hours a day were all done for security purposes. Defendants argue that,

to find an intent to punish, the Court must weigh the conditions of confinement in relation to the resources available to Defendants.

Here, the record also reflects that the state trial court committed Huss to the IMCC for psychological treatment. The purpose of Huss' confinement, in addition to treatment, was for the protection of himself and of others. Even considering the facts in a light most favorable to Huss, the Court concludes that a reasonable person could have believed that because Huss was a danger to himself and others, and given the realities of then-available facilities and services, placing him in Living Unit B was reasonable under the circumstances. This case turns on the unique circumstances of this Plaintiff's security issues and the unique circumstances of temporarily unavailable facilities and services. On these facts, the Defendants are entitled to qualified immunity.

### 2. Due Process Claim: Denial of Medical Treatment.

Huss contends that Defendants are not entitled to qualified immunity on his constitutional violation claim by reason of his failure to receive medical treatment. An inmate or pretrial detainee's right to medical care is a clearly established right. *Foulks v. Cole County, Missouri*, 991 F.2d 454, 456–57 (8th Cir. 1993). "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment." *Id.*, 991 F.2d at 456 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), and stating that pretrial detainees are entitled to at least as much protection as prisoners with respect to their right to medical care). Thus, in order for Huss to establish a violation of his constitutional rights, he must show that

there is a genuine issue of material fact as to whether the Defendants were deliberately indifferent by failing to provide or allow proper medical treatment. *Id.* "If a reasonable official would have known that observation and treatment was necessary, the refusal to provide access to the treatment would constitute deliberate indifference to [Huss]'s constitutional rights." *Id.,* 991 F.2d at 457.

Although the facility had prison-like conditions, it was still a suitable facility because of Huss' extensive criminal history, his mental diagnosis which stated, among other things, that he is dangerous to women, and the limited choices of facilities available. *See, e.g., Phelps v. United States Bureau of Prisons,* 62 F.3d 1020 (8th Cir.1995).

The NGRI court finding that Huss' mental illness, though in remission, made him a danger to female patients precluded Huss from being housed at the IMCC psychiatric facility until three female patients had been discharged, which did not occur until September 17, 2002. The State was given conflicting messages when the law states that the safekeeper must be kept in an appropriate secure facility (February 19, 2002, court order), and a court orders (March 8, 2002) that he be placed at the IMCC psychiatric hospital, with the additional order (October 30, 2002) that he be placed at the CCUSO unit. With these conflicting obligations, and the lack of a gender-segregated facility, the Defendants chose a reasonable alternative for the time in question, namely, to leave Huss at Living Unit B. During the April, 2002, hearing on rule to show cause as to why the March order was not being complied with, the court stated that as soon as the three to four women were discharged, Huss should be moved to the hospital. During the ensuing months, these women were discharged, but other women were admitted, based on administrative decisions that Rogerson made.

Judge Blink in September, 2002, although not finding the State to be in contempt for failing to follow his March 8, 2002, order, did state that the presence of females in the Oakdale facility could no longer serve as an excuse for failing to provide Huss with mental health treatment that may be necessary and had been ordered. The State proposed sending a doctor in to treat Huss in his segregated confinement, but the court doubted that it provided sufficient compliance with Rule 2.22(8).

Further, although Huss complains that he was harmed by not receiving treatment during the five months at issue in this case, Huss did not send Defendants a request for mental health treatment, and the NGRI court found that his condition was in remission. As Huss has not put forward any evidence that a medical condition in remission is ever treatable, Defendants argue that this claim should be dismissed as a matter of law. The Court declines to resolve the case on that basis. In his March 8, 2002, order, Judge Blink ordered that Huss should receive treatment. Thus, it is not incumbent upon Huss himself to request treatment when a court has previously ordered the same. On the record before the Court, no issue has been generated that the delay in mental health evaluation and care rises to the level of a constitutional violation.[1] Under these circumstances, the Court does not find that Defendants were deliberately indifferent to Huss' medical condition nor that they acted unreasonably. Huss' claims based on failure to treat his mental health condition must, therefore, be dismissed.

---

1. While not dispositive on this issue, the Court notes Judge Blink did not find Defendants in contempt for their delay in securing treatment for Huss.

## III. CONCLUSION

The parties agree on the factual issues but disagree on the legal consequences of those facts. The government Defendants in this case held an objectively reasonable belief that they were not violating Huss' constitutional rights by placing him in Living Unit B and delaying his medical treatment until the safety of other female patients could be secured. Because there are no other claims that survive either this Court's abstention or its finding of qualified immunity, Defendants' Motion for Summary Judgment (Clerk's No. 8) is **granted,** and Plaintiff's Motion for Summary Judgment (Clerk's No. 13) is **denied.**

**IT IS SO ORDERED.**

### ORDER ON RECONSIDERATION

Before the Court is Plaintiff's pro se motion to reconsider, now resisted. Although Plaintiff is represented by counsel, the Court has considered Plaintiff's pro se pleading. The Court now denies the motion to reconsider.

Plaintiff criticizes the Court's order granting summary judgment for Defendants. He reiterates his arguments that his mental health treatment was inadequate and his conditions of confinement amounted to unconstitutional punishment. After reviewing the pro se motion to reconsider and the resistance thereto, the court declines to alter its prior ruling.

Plaintiff's motion (Clerk's No. 35) is **denied.**

**IT IS SO ORDERED.**