_____

No. 95-3725
_____

Todd E. Prater,                          *
                                         *
        Appellee,                        *
                                         *  Appeal from the United States
        v.                               *  District Court for the District
                                         *  of Nebraska.
John Dahm; Harold W. Clarke;             *
Aaron Hall; Bobby C. Kilgore,            *
                                         *
        Appellants.                      *
                                  _____

                    Submitted:  April 12, 1996

                        Filed:  July 17, 1996
                                  _____

Before BEAM and MURPHY, Circuit Judges, and NANGLE,* District Judge.
                                  _____

BEAM, Circuit Judge.


        Todd Prater, an inmate committed to the Nebraska Department of
Correctional Services, was assaulted by another inmate while incarcerated
at the Omaha Correctional Center (OCC).  Following the attack, Prater filed
suit against prison officials under 42 U.S.C. § 1983, alleging that they
failed to protect him from a substantial risk of attack and therefore
violated his Eighth Amendment rights.  In a motion for judgment on the
pleadings, the prison officials requested dismissal for failure to state
a claim and asserted the defense of qualified immunity.  The district court
denied the motion and the prison officials appeal.  We reverse.

_____

        *The HONORABLE JOHN F. NANGLE, United States District
        Judge for the Eastern District of Missouri, sitting by
        designation.

## I. BACKGROUND

This lawsuit arose out of an altercation between Prater and a fellow OCC inmate, Robert Penn, in the summer of 1994. At this stage in the proceedings we view the facts in the light most favorable to Prater, National Car Rental Sys., Inc. v. Computer Assoc. Int'l, Inc., 991 F.2d 426, 428 (8th Cir.), cert. denied, 114 S. Ct. 176 (1993), and relate them accordingly.

On February 11, 1994, Prater became a prisoner at OCC. A few months later, defendant Bobby Kilgore, Prater's case manager, met with Prater to inform him that Penn could possibly be transferred to OCC. Kilgore was aware that Prater had had a relationship with Penn's wife and wanted to determine whether the transfer would create any problems between the two inmates. At this meeting, Prater completed an Interview Request Form, stating, "I personally don't have a problem with Robert Penn coming to O.C.C. However, I will advise you, that I have a relationship with his separating wife." Kilgore discussed the situation with his superiors and met with Prater again the following day. Prater reiterated his prior statements, again writing that he did not have a problem with Penn's transfer but noting his relationship with Penn's wife.

Penn's facility assignment was ultimately approved, and on May 31, 1994, Penn was transferred to OCC. Upon arrival, Penn immediately threatened Prater. Prater reported the threats to Kilgore and sent grievances regarding the incident to Harold Clarke, Director of the Nebraska Department of Correctional Services, and John Dahm, Warden of OCC. Kilgore informed Unit Manager Aaron Hall of the threat and advised Prater that he would also alert Deputy Warden West to the incident. West spoke to Penn, who assured West that there would be no more problems between the two inmates.

On June 29, 1994, Prater was temporarily transferred to another facility. He returned to OCC on July 13, 1994. Approximately two weeks later, on July 27, 1994,[1] Penn attacked Prater, punching Prater in the mouth and knocking his teeth loose. Prater sued Kilgore, Hall, Clarke, & Dahm (hereinafter "the prison officials"), alleging that they were deliberately indifferent to the substantial risk of harm he faced from Penn.

The prison officials moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The officials contended that Prater had failed to state a claim on which relief could be granted, and that they were entitled to qualified immunity. The district court denied the motion on both grounds. On appeal, the prison officials contest the district court's denial of qualified immunity. They argue that their actions did not violate Prater's clearly established constitutional right to protection from inmate attacks, and thus that they are entitled to qualified immunity.

## II. DISCUSSION

Ordinarily, a denial of a motion for judgment on the pleadings is not considered a final, appealable order over which we may accept jurisdiction. See, e.g., White v. Holmes, 21 F.3d 277, 279 (8th Cir. 1994). An exception to the final judgment rule exists, however, when the motion is denied on qualified immunity grounds. See Mitchell v. Forsyth, 472 U.S. 511 (1985). An appeal based on

---

[1] We note that some of Prater's pleadings allege that he was beaten on July 7, 1994. Although as a rule a judgment on the pleadings requires that we accept as true all facts pled by the nonmoving party, in this case the prison records clearly indicate that Prater was not in fact incarcerated at OCC on July 7, 1994. Furthermore, when Prater filed grievances regarding the incident with officials at OCC, he stated that the attack took place on July 27, 1994. It appears, therefore, that Prater's pleadings contain some clerical errors. Nevertheless, the actual date of the attack does not alter our analysis of the substance of his complaint.

qualified immunity permits prison officials to claim that all of the conduct which the district court deemed sufficiently supported for purposes of judgment on the pleadings met the standard of objective legal reasonableness required for qualified immunity.  See Behrens v. Pelletier, 116 S. Ct. 834, 842 (1996).  We therefore have jurisdiction to consider, de novo, whether the prison officials are entitled to qualified immunity. White, 21 F.3d at 279.  On an appeal from a motion for judgment on the pleadings, we accept as true all facts pled by Prater and grant him all reasonable inferences from the pleadings in an effort to determine whether material issues of fact remain regarding the prison officials' entitlement to qualified immunity.  See National Car Rental, 991 F.2d at 428.

Qualified immunity shields government actors from liability in civil lawsuits when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Thus, our inquiry begins with an examination of whether Prater has alleged the violation of a constitutional right.  Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996).  If not, the complaint must be dismissed.  Id.  As our cases further establish, however, the question of qualified immunity requires more than a determination that a particular right is "clearly established" in the abstract.  See Anderson v. Creighton, 483 U.S. 635, 640 (1987); Reece v. Groose, 60 F.3d 487, 491 (8th Cir. 1995).  Instead, we must examine whether reasonable officials could have believed their actions violated clearly established law, given the information available to the officials at the time of the attack.  Reece, 60 F.3d at 491.

It is well settled that the Eighth Amendment imposes a duty on the part of prison officials "`to protect prisoners from violence at the hands of other prisoners.'"  Farmer v. Brennan, 114 S. Ct. 1970, 1976 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship,

-4-

842 F.2d 556, 558 (1st Cir.), cert. denied, 488 U.S. 823 (1988)). Nevertheless, "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 1977. The duty to protect requires only that prison officials "take reasonable measures to abate substantial risks of serious harm, of which the officials are aware." Reece, 60 F.3d at 491. Accordingly, the "clearly established" right in this case contains two components: 1) an objectively serious deprivation; and 2) a subjectively culpable state of mind. Farmer, 114 S. Ct. at 1977. Absent facts establishing both factors, no constitutional violation exists and the prison officials are not liable.

Although it is a close question, we assume without deciding that Prater's incarceration with Penn resulted in a serious deprivation of protection, and thus that Prater could establish the objective prong of the constitutional right. Nevertheless, even if we assume the allegations in Prater's pleadings are true, we conclude that Prater's facts are insubstantial as a matter of law to establish the subjective prong of the constitutional violation.

The subjective component of the Eighth Amendment right to protection from inmate attack requires a showing that prison officials acted, or failed to act, with "deliberate indifference" to inmate health or safety. Id. This standard was recently clarified by the Supreme Court in Farmer. There, the Court rejected an objective test for deliberate indifference, which would have permitted liability when a prison official failed to respond to risks of which the official knew or should have known. Id. at 1979. Instead, the Court held that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety." Id. In other words, the Court explained, "the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Moreover, even if the prison officials actually know of a substantial risk to inmate health or safety, the officials may nevertheless escape liability "if they respond[] reasonably to the risk, even if the harm ultimately was not averted." Id. at 1982-83. Therefore, in order to show the state of mind required to establish a constitutional violation, Prater's pleadings must demonstrate that the prison officials failed to act reasonably despite knowledge of a substantial risk of serious harm to Prater. See id. Prater's allegations fail to do so.

As an initial matter, Prater has alleged no facts from which an inference could be made that the prison officials actually knew of the risk to Prater. Although Prater's pleadings allege that he was threatened by Penn, threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm. In all other respects, the pleadings reflect the absence of a reason for alarm on the part of the officials. Prater's complaint admits that the prison officials had assurances from both inmates that there would be no trouble. Furthermore, Prater does not dispute the fact that, despite the threats, he and Penn were incarcerated together for a substantial period of time without incident. Under the circumstances, the two-week period between Prater's return to OCC and the altercation was in itself a sufficient time for prison officials to believe that Prater was not, in fact, in danger. Thus, Prater's own version of the prison officials' conduct does not establish the level of subjective knowledge required for a violation of Prater's clearly established Eighth Amendment rights.[2]

---

[2]By determining that Prater has not alleged facts indicating the prison officials actually knew of the danger to him, we do not suggest that an inmate must suffer physical injury before prison officials will be deemed to possess the requisite actual knowledge for an Eighth Amendment violation. As Farmer acknowledges, there may be circumstances in which a risk is so obvious or well-documented that a factfinder may conclude a prison official was aware of it. 114 U.S. at 1981. Statements or actions by prison officials indicating they perceived a risk will also assist an inmate in establishing the subjective component of an Eighth Amendment violation. Prater, however, has failed to allege such circumstances.

Moreover, even if the officials were aware of the risk to Prater, Prater's allegations provide no basis for a reasonable factfinder to conclude that the officials responded unreasonably to the risk. As <u>Farmer</u> specifically noted, prison officials may not be found guilty of an Eighth Amendment violation if they respond reasonably to a perceived risk, "even if the harm ultimately was not averted." <u>Farmer</u>, 114 S. Ct. at 1982-83. Here, according to Prater, the prison officials consulted Prater prior to Penn's transfer. After Penn's first threats, Kilgore alerted Deputy Warden West, who promptly received assurance from Penn that there would be no more problems between the two inmates. Given the information available to the prison officials at the time, these facts do not create a material issue of fact as to whether the prison officials acted unreasonably in responding to the tensions between Prater and Penn. Accordingly, even though harm to Prater was not ultimately avoided, the prison officials' conduct does not rise to the level of a constitutional violation.

In summary, Prater has failed to allege facts which, taken as true, establish a violation of Prater's clearly established constitutional rights. The prison officials are therefore shielded from liability.

**III. CONCLUSION**

For the foregoing reasons, we reverse the decision of the district court and remand for judgment in favor of the prison officials.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.