**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3840
_____

| | |
|---|---|
| Lonell Newman; Hoseia Chestnut, | * |
| | * |
| Plaintiffs - Appellees, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Arkansas. |
| Levi Holmes, | * |
| | * |
| Defendant - Appellant, | * |

_____

Submitted: May 22, 1997
Filed: September 3, 1997

_____

Before BEAM, Circuit Judge, HENLEY, Senior Circuit Judge, and LOKEN, Circuit
Judge.

_____

LOKEN, Circuit Judge.

In this § 1983 action, Arkansas inmates Lonell Newman and Hoseia Chestnut
sued Correctional Officer Levi Holmes for violating their Eighth Amendment rights by
failing to protect them from an attack by another inmate. The jury returned a verdict
for plaintiffs and awarded Newman and Chestnut damages of $500 each. Holmes
appeals the denial of his motion for judgment as a matter of law. We affirm.

# I.

On May 7, 1994, inmate Johnson was housed in Barracks 4 at the Tucker Maximum Security Unit prison. Johnson was on disciplinary court review status ("DCR"), charged with violating prison rules. DCR is a type of isolated confinement. The inmate is fed in his cell and is not allowed out of the cell unless handcuffed and escorted by a prison official. One reason for isolating DCR inmates in this manner is to protect other inmates and guards from a presumptively dangerous prisoner until his disciplinary hearing is completed. The record does not reflect the disciplinary issue that caused Johnson to be on DCR status.

On May 7, Newman and Chestnut were in the general prison population but were also housed in Barracks 4. At about 4:15 P.M., Newman and Chestnut were watching TV in the cell block day room when Johnson attacked first Newman and then Chestnut, cutting both with a homemade knife. They escaped the day room and alerted prison officials, who subdued Johnson after a struggle. The attack was unanticipated. Newman had never had any other problem with Johnson. Chestnut testified that he and Johnson had exchanged heated words playing basketball the previous day, but "it wasn't nothing but talk."

Officer Holmes was assigned to the Barracks 4 control booth on May 7 and was responsible for opening and closing the doors in Johnson's cell block. At trial, Holmes testified that he knew of Johnson's DCR status, which was shown on the cell block roster. He also knew that DCR inmates may not leave their cells unescorted because they are presumptively dangerous to others. When he began his shift that morning, he placed a prominent DCR tag on the switch controlling Johnson's cell door, the standard reminder to the control booth operator not to open a DCR inmate's cell door. Holmes flatly denied opening Johnson's cell door but admitted that his supervisor, Lieutenant Curtis Hampton, had accused Holmes of being responsible for Johnson's escape.

The cell block log for May 7 was a trial exhibit. It reflects that a routine check at 4:00 P.M. showed Johnson's cell door closed, and that he was fed in his cell at 4:01 P.M. The normal procedure for feeding a DCR inmate is to handcuff him through the cell bars, open the cell door, place his food tray inside, and then secure the cell door before uncuffing the inmate. The log does not reflect who fed Johnson at 4:01, and that prison official did not testify. There was testimony that escapes from isolated confinement are not uncommon, that inmates in isolation are clever at wedging obstructions that keep their cell doors from fully closing or locking, and that Johnson's cell block nickname was "Houdini." Lieutenant Hampton testified that he investigated the incident and concluded that Johnson most likely escaped because Holmes inadvertently opened the cell door, for example, by hitting an "override" button that opens seventeen cell doors at once. The jury was told that Holmes and another officer were subjects of a disciplinary hearing, but it was not told the results of that hearing.

## II.

Holmes argues that the evidence was insufficient to support a finding that he violated plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment by failing to protect them from Johnson's unprovoked attack. The jury necessarily found that Johnson escaped because Holmes for some reason opened Johnson's cell door, and the evidence is clearly sufficient to support that finding. The question is whether the evidence supports the additional finding of an Eighth Amendment violation. We view the facts and all reasonable inferences in the light most favorable to the jury's verdict. "Negligence, however, is not enough to establish [an Eighth Amendment] violation." Stephens v. Johnson, 83 F.3d 198, 201 (8th Cir. 1996).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court confirmed that a prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates.

The Court then undertook to define more precisely the concept of deliberate indifference. Because the Eighth Amendment bans cruel and unusual *punishment*, suits against prison officials must satisfy a subjective requirement, an inquiry into the prison official's state of mind. The Court concluded that deliberate indifference in this context means actual intent that the inmate be harmed, or knowledge that harm will result, or reckless disregard of a known excessive risk to inmate health and safety. See 511 U.S. at 835-40.

On appeal, Holmes first argues that there was insufficient evidence of an excessive risk of harm because there was no evidence that inmate Johnson was a risk to attack Newman or Chestnut unless they were kept separated. We disagree. There was testimony that prison officials isolate all DCR inmates because they are a potential danger to others. No doubt some prison rule violations suggest a greater propensity toward violence than others. But when prison administrators conclude that all inmates charged with rule violations should be isolated as dangerous, it would encroach upon the administrators' greater knowledge of prison conditions for us to hold *as a matter of law* that release of such inmates to the general prison population does not create a substantial risk that they will attack others.

Holmes next argues that there was insufficient evidence that he was deliberately indifferent to an excessive risk of harm to plaintiffs. This issue requires more lengthy consideration. In Farmer and our prior Eighth Amendment cases applying Farmer, the defendant prison officials consciously decided not to provide the plaintiff inmate greater protection, or to disregard her medical complaints. See, e.g., Coleman v. Rahija, 114 F.3d 778 (8th Cir. 1997); Prater v. Dahm, 89 F.3d 538 (8th Cir. 1996). This case is somewhat different. It is undisputed that prison officials took elaborate steps to isolate Johnson from other inmates, procedures that included Holmes putting a DCR tag on Johnson's cell door switch in the control room. Johnson escaped to attack Newman and Chestnut because these procedures failed. Though he denied opening the cell door, Holmes was found responsible for that failure. Knowledge of the risk is not in issue --

Holmes admitted knowing that he should not open Johnson's cell door without a guard escort because DCR inmates are a danger to others. The critical question is whether Holmes was merely negligent, or did his conduct manifest the requisite deliberate indifference for an Eighth amendment violation.

Plaintiffs argue that Holmes should be liable because he "knowingly released Johnson from his cell." But the Eighth Amendment issue is whether Holmes disregarded a known risk that other inmates would be harmed. If Holmes had ignored the procedures for isolating Johnson and intentionally opened Johnson's cell door for the purpose of assisting Johnson in assaulting others, that intent to cause harm would clearly constitute deliberate indifference for Eighth Amendment purposes. Likewise, if Holmes had opened Johnson's cell door knowing that harm to other inmates would almost certainly result, Holmes's conduct would constitute deliberate indifference. But there is nothing in the record supporting a finding of malicious intent, and nothing approaching knowledge of harm given the complete absence of evidence that Holmes knew anything about Johnson other than the fact that he was on DCR status, a status that includes a wide range of rule violations that do not suggest a propensity to assault other inmates.

That leaves the question whether the jury could reasonably find that Holmes nonetheless recklessly disregarded a known excessive risk to inmate safety by opening the cell door of a DCR inmate. In Prater, where the issue was knowledge of the risk, we restated the Farmer standard as being whether "prison officials failed to act reasonably despite knowledge of a substantial risk of serious harm." 89 F.3d at 541. But the duty to act reasonably is a negligence standard, and Farmer stands for the broad proposition that deliberate indifference includes something more than negligence but less than actual intent to harm. If Holmes was merely negligent in creating a known risk by opening Johnson's cell door, he is not liable under the Eighth Amendment, like the prison guard who failed to prevent an inmate assault because he left his post in McGill v. Duckworth, 944 F.2d 344, 350-51 (7th Cir. 1991), cert. denied, 503 U.S.

907 (1992), or the prison doctor who negligently mistook a heart attack for indigestion in <u>Bellecourt v. United States</u>, 994 F.2d 427, 431 (8th Cir. 1993), <u>cert. denied</u>, 510 U.S. 1109 (1994).  <u>See also</u> <u>Gibbs v. Franklin</u>, 49 F.3d 1206, 1208 (7th Cir. 1995) ("[d]eliberate indifference, *i.e.*, the subjective intent to cause harm, cannot be inferred from a prison guard's failure to act reasonably"), <u>cert. denied</u>, 116 S. Ct. 167 (1995).

Having thus defined the appropriate standard, we find the question to be very close, particularly because it is well-settled that Holmes's violation of an internal prison regulation does not by itself give rise to an Eighth Amendment claim.  <u>See</u> <u>Falls v. Nesbitt</u>, 966 F.2d 375, 379-80 (8th Cir. 1992).  But we owe great deference to the jury's view of the evidence.  Holmes's testimony lacked credibility because he denied ever opening Johnson's cell door, whereas the Barracks 4 log showed that Johnson was fed a few minutes before his escape.  In addition, despite obvious access to prison records, the defense failed to explain why Johnson was on DCR status.  These unexplained holes in the defense may well have persuaded the jurors that the defense had not been candid with them.  On balance, we conclude that the circumstantial evidence of deliberate indifference is sufficient to require that the jury verdict be upheld.

The judgment of the district court is affirmed.

A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-