202 F.Supp.2d 934 (2001)
Douglas G. TOBIAS, Plaintiff,
v.
Dan CAMPBELL, Scott Lane, Thomas L. O'Keefe, and Richard Koch, Defendants.
No. 2:00CV22DDN.
United States District Court, E.D. Missouri, Northern Division.
December 5, 2001.
*935 Douglas G. Tobias, Moberly, MO, pro se.
Brent Mayberry, Mayberry and Mayberry, Kirksville, MO, for Douglas G. Tobias.
John W. Harden, Sr., Hinshaw and Culbertson, St. Louis, MO, Charles E. Rendlen, III, Debora L. Hale, Rendlen Law Firm, Hannibal, MO, for Dan Campbell, Scott Lane, Thomas L. O'Keefe, Richard Koch.

MEMORANDUM OPINION
NOCE, United States Magistrate Judge.
This matter is before the Court for findings of fact and conclusions of law, following a non-jury trial held on November 26, 2001. Fed.R.Civ.P. 52(c). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).
Plaintiff Douglas Tobias commenced this action under 42 U.S.C. § 1983 against various officials of the Marion County, Missouri, jail, claiming that their failure to protect him from an assault by fellow inmates violated his federal constitutional rights.
Tobias alleged in his amended complaint that on the evening of October 30, 1999, he told the jail officials that his fellow inmates had threatened to get even with him for his intervening in their beating of another inmate, Michael Karr. He further alleged that despite his request for protection, defendants took no action to remove him from an area of the jail where he was exposed to the inmates who threatened him, and two days later he was assaulted by them, sustaining permanent, substantial injuries. The complaint asserts that defendants' actions show an intentional or careless indifference to the safety and well being of plaintiff.
Having considered the evidence adduced at trial, the Court makes the following findings of fact and conclusions of law:

FACTS
1. During October 1999, Douglas G. Tobias and Michael Karr were incarcerated in prisoner cell pod G of the Marion County Jail and Law Enforcement Center (Jail) in Marion County, Missouri. The Marion County Jail is operated by the Sheriff of Marion County, who during October and November 1999 was Dan Campbell.
2. Pod G is one of ten prisoner cell areas and a gym-exercise area that are arrayed fan-like around the outer viewing *936 windows of the correctional officers' Control Center. Depending on the shift, two or three correctional officers are assigned to the Control Center to observe and supervise the prisoners in the pods. The pods contain one, two, and three-prisoner cells and house up to 24 prisoners each. The outer windows of the Control Center are one-way-out mirrors. The pods are separated from the Control Center by a hallway and two-way glass windows in the pod walls and doors. Each pod has an upper and a lower level, each containing four cells. A one-flight stairway inside each pod connects the upper and lower levels. Outside the cell doors on the lower level is an open area containing several tables for the prisoners' eating and other activities. Each cell has an intercom for communication with the Control Center. The Jail houses both federal and state prisoners.
3. While incarcerated at the Marion County Jail, Tobias and Karr became friends. During the evening of October 31, 1999, Tobias walked into Karr's cell and saw two Hispanic federal prisoners physically assaulting Karr. The federal prisoners were reputed to be rougher than the other prisoners. While the Hispanic prisoners hit Karr, they did not inflict serious injury on him.
4. Tobias pulled the assaulting prisoners off Karr. They told Tobias to stay out of the matter and then they left Karr's cell. From that time until the morning of November 1, 1999, the Hispanic prisoners threatened Tobias and Karr.
5. At approximately 1:00 p.m. on November 1, Tobias spoke by intercom with the Control Center. At that time Correctional Officers Scott Lain, Richard Kooh, and another officer were on duty. Plaintiff asked to be allowed out of the cell pod so that he could fetch toilet paper; this was a ruse for an opportunity to speak with the officers. He was allowed out of the pod and he walked to the gym door where he met with Officers Lain and Koch. Tobias told Lain and Koch about the Hispanic prisoners' attack on Karr. He expressed his concern for Karr's welfare. Tobias, who considered himself able to take care of himself physically with other prisoners and to be a leader of prisoners, did not tell the officers that he felt that he, too, was at risk and he did not ask the officers to move him out of the pod for his safety. The officers then called Karr out of the pod. They asked him about the incident and whether he felt he was in any danger. Karr denied the incident happened and said he did not feel he was at risk. The officers reported the matter to Sheriff Campbell and removed Karr from Pod G for his safety. They did not remove Tobias from Pod G, because the officers did not know he was at risk of attack by the Hispanic prisoners.
6. For the 3:00 p.m. to 11:00 p.m. shift, Correctional Officers Thomas O'Keefe, Richard Koch, and Rodney Perry were on duty in the Control Center. At approximately 3:15 p.m. in Pod G two Hispanic prisoners violently assaulted Tobias at the bottom of the stairs in the pod. They inflicted severe, permanent injuries to his mouth and jaw. After the beating ended, Tobias summoned help on the intercom. Out of fear of retaliation by prisoners, Tobias initially told correctional officers that he had fallen down the stairs in the pod.
7. At 5:05 p.m. Tobias was examined by Marsha Fuller, R.N., the jail's nurse. Three times she asked him what had happened; each time he said he had fallen down some stairs. When she said that she believed he must have had some help falling down the stairs, Tobias nodded affirmatively but would not identify any perpetrator. Fuller directed the officers to transport Tobias to obtain emergency *937 medical care. Correctional officers first took Tobias to the Hannibal, Missouri, Ambulatory Care Facility for emergency medical attention. They were directed on to the Hannibal Regional Hospital emergency room. At the hospital, at approximately 10:00 p.m., Tobias told Dr. Alan M. Stolls that he had been assaulted by several prisoners in the Marion County Jail. The medical attention given Tobias over several months thereafter included the removal of teeth and the fixation of his jaw by the application of metal plates with bolts.
8. During the week after November 1, Tobias made a written report of the assaults on Karr and on himself. Tobias wrote that on November 1 he told the officers that, following the attack on Karr, they needed to get Karr out of Pod G because of the attack on him. In this written report, Tobias did not report that he had told the officers that he, too, was at risk and desired to be removed from Pod G. In a later informal conversation at the jail, Tobias told Sheriff Campbell that he had started the fight with the Hispanic prisoners.

DISCUSSION
This court has subject matter jurisdiction over this judicial action for redress for the alleged deprivation under color of state law of a right secured by the Constitution of the United States. See 28 U.S.C. § 1343(a)(3).
State prison inmates have a clearly established right under the Eighth Amendment to be protected from violence by other inmates. Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A state prison official violates this right when "he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." Curry v. Crist, 226 F.3d 974, 977 (8th Cir.2000) (quoted case omitted); see also Smith v. Gray, 259 F.3d 933, 934 (8th Cir.2001); Prater v. Dahm, 89 F.3d 538, 541 (8th Cir.1996) (the duty to protect requires only that prison officials take reasonable measures to abate substantial risks of serious harm of which the officials are aware).
A failure-to-protect claim, such as that prosecuted by plaintiff Tobias in this action, is bifold: (1) an objective component, whether there was a substantial risk of harm to the prisoner from another prisoner; and (2) a subjective component, whether the prison official was deliberately indifferent to that risk. Curry, 226 F.3d at 977; Falls v. Nesbitt, 966 F.2d 375, 378 (8th Cir.1992).
The cardinal issue presented by plaintiff's case is whether or not the defendant prison officials knew of the substantial risk of harm to inmate Tobias following the attack on Karr. In spite of the arguments of plaintiff's counsel,[1] the probative evidence causes the court to believe that no one, including Tobias, advised the officers that Tobias was at risk. Tobias did not ask to be removed from Pod G for his own protection. He felt he was up to protecting himself. When quizzed by nurse Fuller about his injuries, he thrice refused to admit to her he had been attacked by prisoners. Several days after the attack, when Tobias made a handwritten statement of the assaults on Karr and on himself, he recounted how he told the correctional officers that Karr needed to be removed from Pod G for his protection; he did not include in this written statement that he had also told the officers that he himself needed to be removed from the pod for his own protection. The defendant *938 correctional officers did not know of a risk of harm to Tobias from the Hispanic federal prisoners in Pod G. In consequence, the defendants were not deliberately indifferent to that risk.
For these reasons, judgment will be for the defendants.

JUDGMENT
This action came on for trial before the Court sitting without a jury, the parties having consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c). The Court having filed its findings of fact and conclusions of law herewith,
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Douglas G. Tobias have and recover nothing from defendants. The action is dismissed with prejudice. Each party shall pay his own costs of the action.
NOTES
[1] The Court very much appreciates the strong and capable representation provided plaintiff by his appointed counsel, Brent Mayberry, Esq.