# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1611

_____

| | | |
|---|---|---|
| Bobbie J. Coleman, Administratrix of the Estate of Billy Wayne Coleman, Jr., deceased, | * * * * | |
| Plaintiff-Appellee, | * * | |
| v. | * * | |
| Dave Parkman, St. Francis County Sheriff; Doris Halbert, Chief Jail Administrator, | * * * | Appeals from the United States District Court for the Eastern District of Arkansas. |
| Defendants, | * * | |
| Gannen Lee Manthey, Jailer; Hank Leary, Captain, | * * * | |
| Defendants-Appellants, | * * | |
| Henry Thomas, Deputy; John and Jane Does, 1-5, | * * * | |
| Defendants. | * | |

_____

03-1733
_____

Bobbie J. Coleman, Administratrix     *
of the Estate of Billy Wayne         *
Coleman, Jr., deceased,            *
                                     *
         Plaintiff-Appellant,      *
                                       *
    v.                                     *
                                       *
Dave Parkman, St. Francis County    *
Sheriff; Doris Halbert, Chief Jail     *
Administrator,                    *
                                       *
         Defendants-Appellees,    *
                                       *
Gannen Lee Manthey, Jailer; Hank    *
Leary, Captain; Henry Thomas, Deputy;   *
John and Jane Does, 1-5,          *
                                       *
         Defendants.            *

_____

Submitted:  September 9, 2003

Filed:  November 12, 2003
_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.
_____

BEAM, Circuit Judge.

Mrs. Bobbie J. Coleman (Mrs. Coleman) sued law-enforcement and prison officials after her son, Billy Wayne Coleman (Coleman), committed suicide in his jail cell. These interlocutory appeals arise from the district court's[1] summary judgment rulings on qualified immunity. In No. 03-1611, Gannen Lee Manthey and Hank Leary (appellants) assert the trial judge erred when she denied their summary judgment motions. We affirm. In the cross-appeal, No. 03-1733, Mrs. Coleman asserts the district court erred when it granted two other defendants' summary judgment motions. We have no jurisdiction to consider the cross-appeal.

## I. BACKGROUND

The parties dispute many of the following facts. Because we are reviewing the district court's summary judgment rulings, we recite and evaluate the facts in the light most favorable to the non-movant, Mrs. Coleman. Gregoire v. Class, 236 F.3d 413, 415 (8th Cir. 2000).

In November of 1999, Captain Hank Leary began investigating reports that Coleman was involved in misdemeanor crimes. Leary interviewed several people who knew Coleman. These interviews occurred the day of and the day before Leary's arrest of Coleman. Interviewees told Leary that Coleman needed mental help, had been doing "crazy things," was a risk to harm himself or others, and would kill himself if jailed. When Leary located Coleman to arrest him, the person with Coleman told Leary that Coleman had been carrying a rifle and had threatened suicide.

Leary arrested Coleman and drove him to jail. When they arrived at the jail, Leary questioned Coleman for about thirty minutes. Coleman told Leary he had

---

[1]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

contemplated suicide the day before, but had decided against it. Jailer Gannen Lee Manthey was working that night. Leary and Manthey do not agree on that night's events.

Leary testified that, after interviewing Coleman, he concluded Coleman was not a suicide risk. Leary also asserted he did not tell Manthey that Coleman was a suicide risk and did not inform Manthey of any of the interviewees' warnings. But, Manthey's detail log stated "Capt[ain] Leary advised that before, Mr. Coleman had threatened suicide. Therefore he would need to be placed in isolation and monitored." Manthey testified, unequivocally, that Coleman was on suicide watch.

When Leary left, he told Manthey to put Coleman in the drunk tank. Appellants testified that, ordinarily, they would have placed Coleman in the holding cell, but the holding cell held another prisoner who had been rowdy and destructive. The drunk tank had eighteen exposed bars. The holding cell had no exposed bars. And unlike the holding cell, the drunk tank was difficult to observe because it was in the jail's upstairs portion. Before he directed Coleman to the drunk tank, Manthey issued Coleman the usual prison items, including a bed sheet.

Manthey last checked on Coleman at about 1:30 A.M. At 1:42 A.M., Coleman hung himself by tying the bed sheet to the exposed bars. This lawsuit followed.

As Administratrix of Coleman's estate, Mrs. Coleman sued appellants. She alleged that placing Coleman in the drunk tank with a bed sheet was deliberately indifferent to the risk that Coleman would commit suicide. She also sued Dave Parkman and Doris Halbert, alleging they were responsible for a lack of training and prison policies that violated Coleman's rights. All defendants moved for summary judgment in their individual capacities, asserting qualified immunity. The trial judge denied appellants' motions, but granted Parkman's and Halbert's motions.

Before turning to the merits, we must address whether we have jurisdiction to consider these interlocutory appeals.

## II.     JURISDICTION

Generally, when a party appeals before a final judgment, we have no jurisdiction to consider the appeal. See 28 U.S.C. § 1291; Kincade v. City of Blue Springs, 64 F.3d 389, 394 (8th Cir. 1995). This appeal involves a familiar exception to the final judgment rule: when a district court denies an official's qualified-immunity-based summary judgment motion, we can consider the official's interlocutory appeal under the collateral order doctrine, provided the official appeals a question of law. Kincade, 64 F.3d at 394; see Johnson v. Jones, 515 U.S. 304, 312 (1995); Mitchell v. Forsyth, 472 U.S. 511, 527 (1985). Manthey's and Leary's appeal, No 03-1611, satisfies this exception.

The collateral order doctrine does not apply, however, when a party complains that the district court should not have *granted* summary judgment based on qualified immunity. In those cases, we have no jurisdiction to consider the interlocutory appeal unless the appeal falls within our pendent appellate jurisdiction. We may exercise pendent appellate jurisdiction when review of the summary judgment grant is inextricably intertwined with an appealable decision, or is necessary to ensure meaningful review of an appealable decision. Kincade, 64 F.3d at 394. Two decisions are "inextricably intertwined" only if resolving the appealable decision "necessarily resolves the pendent claim as well." McCoy v. City of Monticello, 342 F.3d 842, 849 (8th Cir. 2003); see Jones v. Clinton, 72 F.3d 1354, 1357 n.4 (8th Cir. 1996). Here, of course, the "appealable decision" is Leary's and Manthey's interlocutory appeal.

We do not have pendent appellate jurisdiction over the cross-appeal. Mrs. Coleman's claims against Parkman and Halbert arise from their "failure to train and

promulgate policy." Brief of Bobbie J. Coleman, at iv. Her claims against appellants arise from their actions on the night of Coleman's suicide. Pendent appellate jurisdiction does not arise merely because Mrs. Coleman complains the defendants all violated the same constitutional amendment and caused the same harm. Nor does it arise because the defendants all asserted qualified immunity defenses.

We can meaningfully review Mrs. Coleman's claims against appellants without examining the training policies and procedures. And, resolving appellants' qualified immunity defenses does not necessarily resolve Parkman's and Halbert's rights. Mrs. Coleman does not assert that appellants trained personnel or formed policy. Indeed, our resolution of this appeal demonstrates that these cases are not inextricably intertwined because we resolve appellants' arguments without mentioning Halbert, Parkman, or the training policies that form the basis of Mrs. Coleman's complaint against Parkman and Halbert. Thus, we dismiss the cross-appeal because it is not an appeal from a final judgment, it does not fall within the collateral order doctrine, and it does not fall within our pendent appellate jurisdiction.

## III. QUALIFIED IMMUNITY AND PRISONER-SUICIDE CASES

When a defendant asserts qualified immunity, we must perform two inquiries in "proper sequence." Saucier v. Katz, 533 U.S. 194, 200 (2001); Wilson v. City of Des Moines, 293 F.3d 447, 450 (8th Cir. 2002). First, we must ask whether, when viewed in the light most favorable to the plaintiff, the alleged facts show the official's conduct violates a constitutional right. Saucier, 533 U.S. at 201. If the answer is no, we proceed no further. But if the answer is yes, "the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

Leary and Manthey only appeal under <u>Saucier</u>'s first prong. That is, appellants' sole issue on appeal is whether the district court erred when it found the alleged facts, viewed in the light most favorable to Mrs. Coleman, show appellants violated the Constitution.[2] To resolve this issue, we must first examine the legal principles that govern Mrs. Coleman's claim.

The Eighth Amendment prohibits officials from acting with deliberate indifference towards an inmate's substantial suicide risk, <u>Gregoire</u>, 236 F.3d at 417, and the Fourteenth Amendment extends at least as much protection to pre-trial detainees like Coleman. <u>Hott v. Hennepin County</u>, 260 F.3d 901, 905 (8th Cir. 2001). To prevail on her deliberate indifference claim, Mrs. Coleman must show: (1) appellants knew Coleman presented a substantial suicide risk; and (2) appellants failed to respond reasonably to that risk. <u>Olson v. Bloomberg</u>, 339 F.3d 730, 735 (8th Cir. 2003).

First, Mrs. Coleman must show actual knowledge. It is not enough to show the risk was obvious. A prison official is not liable under the Fourteenth Amendment unless the official knows of facts evidencing a substantial suicide risk *and* the official actually infers the prisoner presents a substantial suicide risk. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). But, like always, a plaintiff can prove knowledge through circumstantial evidence. <u>Id.</u> at 843. So, while obviousness of the risk is not the

---

[2]"The only question on this appeal is whether Leary and Manthey took action or inaction that amounts to a constitutional violation under the Fourteenth Amendment." Appellants' Brief at 17. Appellants do not argue that the right was not "clearly established" as defined by <u>Saucier</u>. We pause only to note the difficulty courts have experienced when evaluating <u>Saucier</u>'s second step in deliberate indifference cases. <u>E.g.</u>, <u>Ford v. Ramirez-Palmer</u>, 301 F.3d 1043, 1049-1053 (9th Cir. 2002); <u>Walker v. Benjamin</u>, 293 F.3d 1030, 1037 (7th Cir. 2002); <u>see, e.g.</u>, <u>Jacobs v. West Feliciana Sheriff's Dep't</u>, 228 F.3d 388, 394 (5th Cir. 2000).

ultimate inquiry, it may serve as circumstantial evidence that the officials actually knew of the risk.[3]  See id.

Second, we must evaluate appellants' responses to the known risk.  Once an official knows of a risk, the Eighth Amendment requires the official take reasonable measures to abate the risk.  Olson, 339 F.3d at 735.  "When determining the adequacy of an official's response to a known risk of inmate safety, 'deliberate indifference includes something more than negligence but less than actual intent to harm'; it requires proof of a reckless disregard of the known risk."  Riley v. Olk-Long, 282 F.3d 592, 597 (8th Cir. 2002) (quoting Newman v. Holmes, 122 F.3d 650, 653 (8th Cir. 1997)).

## IV.  APPLICATION

When we view the facts in the light most favorable to Mrs. Coleman, we agree they support an inference that appellants actually knew Coleman presented a substantial suicide risk.  Appellants rely heavily upon their own assertions that they had no subjective knowledge.  The jury may believe appellants.  But, courts cannot use Federal Rule of Civil Procedure 56 to resolve credibility issues, and the evidence supports a reasonable inference that appellants knew of the risk.

During the pre-arrest investigation, interviewees told Leary that Coleman was a suicide risk, had recently threatened suicide, and would kill himself if jailed.  Further, appellants disagreed about the most relevant events.  Leary testified that, after interviewing Coleman at the jail, he concluded Coleman was no risk.  Manthey

---

[3]In other words, a district court should never ask a jury whether a risk was obvious or whether the official should have known.  The court must ask whether the official knew.  But a plaintiff need not secure officials' admissions to support a verdict.  Rather, a plaintiff can support an "actually knew" answer with sufficient "must have known" evidence.  See Farmer, 511 U.S. at 843 & n.8.

was the jailer and did not participate in the investigation. He acted only upon the information Leary conveyed to him. Manthey testified, unequivocally, that Coleman was on suicide watch. A reasonable jury could question what caused Manthey to place Coleman on suicide watch, and could infer it was knowledge that Coleman was a suicide risk.

Further, the evidence supports an inference that appellants recklessly disregarded the risk that Coleman would commit suicide. The jury could reasonably deduce that appellants recklessly disregarded that risk when they issued Coleman a bed sheet and placed him in a cell where they could not easily observe him.

Appellants correctly note that knowledge is a matter of degree and the Fourteenth Amendment requires different responses depending on an official's knowledge level. In this case, however, that argument is for the jury. Appellants ask us to evaluate their responses in light of their own version of their knowledge. In short, appellants ask us to evaluate their responses in light of Leary's "subjective knowledge that Coleman was *not* going to commit suicide." Appellants' Reply Brief at 2 (emphasis in original). But, Mrs. Coleman has created a genuine issue of material fact as to appellants' knowledge levels. Accordingly, as we did above, we must evaluate appellants' responses in light of the level of knowledge most favorable to Mrs. Coleman.

Finally, appellants extensively brief this court's prisoner-suicide precedent. Appellants rely on three cases and state "[i]t is impossible to conclude that Manthey and Leary's actions or inactions were constitutional violations when viewed as compared to the actions of the law enforcement officers" in prior cases. Appellants' Brief at 18 (citing Hott, 260 F.3d 901; Yellow Horse v. Pennington County, 225 F.3d 923 (8th Cir. 2000); Williams v. Kelso, 201 F.3d 1060 (8th Cir. 2000)). Again, we note that appellants rely upon these cases to show they did not violate the Constitution, not to show Coleman's right was not "clearly established" under the

particular circumstances. See Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002).

The cited cases are distinguishable. First, Mrs. Coleman does not allege appellants *should have* discovered Coleman was a suicide risk. Rather, she alleges appellants *did* know of the risk. See Hott, 260 F.3d at 906; see generally, Olson, 339 F.3d at 735 n.6 (noting the distinction between cases in which plaintiff alleges officials failed to discover a risk and cases in which plaintiff alleges officials failed to take reasonable measures to abate a known risk). Second, viewing the facts as we must at this stage, this is not a case in which officials took reasonable, preventative measures that, in hindsight, a court deems inadequate. Jailer Manthey testified that placing a suicide-watch inmate in the drunk tank with a sheet "would come under the common sense rule. I think if a man was on suicide watch and you gave him something to harm himself, I think that would come under the common sense rule." Further, Captain Leary testified he knew the drunk tank was not a good place for a suicidal inmate. When asked whether "[a]ny person in law enforcement knows that it is not reasonable to give an individual that [sic] is suicidal a sheet and put him in a cell with exposed bars," Leary responded "I would think so, yes, sir."

Appellants' cited authorities confirm that officials do not violate the Constitution when they negligently fail to diagnose a prisoner's suicide risk. And, the cases protect an official who takes reasonable measures to abate a known risk. But here, appellants' own testimony suggests that, if they knew Coleman was suicidal, their actions were unreasonable, and Mrs. Coleman presented conflicting testimony regarding whether the officials knew of the risk. Under these facts, the jury must resolve her constitutional claims.

Accordingly, we affirm the district court.

## V. CONCLUSION

We affirm cause No. 03-1611. We dismiss cause No. 03-1733 because we have no jurisdiction to decide it.

_____