**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 2, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RAUSHI TEAREZ TURNER, an
individual,

     Plaintiff - Appellant,

v.

OKLAHOMA COUNTY BOARD OF
COUNTY COMMISSIONERS;
OKLAHOMA COUNTY DETENTION
CENTER, an Oklahoma governmental
agency; SHERIFF JOHN WHETSEL, an
individual; STEPHEN SCOTT, an
individual,

     Defendants - Appellees.

No. 19-6092
(D.C. No. 5:18-CV-00036-SLP)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

The district court dismissed Raushi Turner's complaint, which alleged

constitutional deprivations when he was a pretrial detainee at the Oklahoma County

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Detention Center ("OCDC"). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

### A. *Factual History*

"In reviewing the grant of a motion to dismiss, we accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party . . . ." *Doe v. Woodard*, 912 F.3d 1278, 1285 (10th Cir.), *cert. denied sub nom. I.B. v. Woodard*, 139 S. Ct. 2616 (2019).

In his third amended complaint, Mr. Turner alleged the following:

On October 28, 2015, he argued and fought with detainee Demetrius Stamps. Housing Monitor ("HM") Stephen Scott was supervising the detainees from a bubble station. He watched the altercation but did not intervene until the two detainees struck each other. Then HM Scott banged on the window. Mr. Turner approached the window and said Mr. Stamps was threatening to kill him. Mr. Turner walked away from Mr. Stamps, who yelled that he was going to kill Mr. Turner. Mr. Stamps went back to his cell, locked the door, and made a knife.

About 30 minutes later, a nurse unlocked Mr. Stamps's cell, releasing him back into the general population. He tried to corner Mr. Turner, shouting that he was going to stab him. HM Scott noticed Mr. Stamps cornering Mr. Turner, and called for an officer. The officer arrived and ordered Mr. Stamps to submit to being handcuffed, but he refused. Mr. Stamps chased Mr. Turner and stabbed him in the back and leg.

2

## B. *Procedural History*

Mr. Turner filed suit in Oklahoma state court against HM Scott and then-Sheriff Whetsel in their individual capacities. He sued them for a constitutional violation under 42 U.S.C. § 1983 and for intentional infliction of emotional distress under state law. He also named the OCDC and the Board of County Commissioners of the County of Oklahoma ("Board"). The Board removed the action to federal court.

Mr. Turner alleged HM Scott failed to protect him from Mr. Stamps's attack by not addressing his threats to stab Mr. Turner and not alerting other OCDC staff of the first altercation.

As to Sheriff Whetsel, Mr. Turner relied on (1) a 2008 Department of Justice ("DOJ") report finding that OCDC conditions permitted inmate-on-inmate violence, and (2) a 2009 Memorandum of Understanding ("MOU") in which Sheriff Whetsel and others "agree[d] to improve the safety of the jail including increased supervision to prevent inmate-on-inmate violence and adequate training of jail staff." R. Vol. II, at 209 n.5. The MOU expired before the October 2015 incident alleged here. Mr. Turner asserted Sheriff Whetsel failed to protect him and failed to train OCDC staff for effective surveillance.

The defendants moved to dismiss on various grounds. The federal district court dismissed (1) the Board on statute-of-limitation grounds; (2) the OCDC as not amenable to suit; (3) the failure-to-protect claim against HM Scott for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and qualified immunity; (4) the supervisory liability claims

3

against Sheriff Whetsel for failure to state a claim under Rule 12(b)(6) and qualified immunity; and (5) the state-law claims as untimely.

Mr. Turner appeals pro se, arguing that the district court erred in holding that he (1) failed to state a failure-to-protect claim against HM Scott, (2) failed to state supervisory liability claims of failure to protect and failure to train against former Sheriff Whetsel, and (3) was not entitled to equitable tolling of the statute of limitations on his state law claim. He has not challenged the district court's dismissal of the OCDC, and he does not contest dismissal of the Board on statute of limitations grounds.[1]

## II. **DISCUSSION**

### A. *Standard of Review*

"We review de novo the grant of a motion to dismiss under Rule 12(b)(6) due to qualified immunity. At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Doe*, 912 F.3d at 1288 (citation, brackets, and internal quotation marks omitted).

"Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, this court has repeatedly

---

[1] Mr. Turner filed a document titled "show of cause" in which he requests this court to grant him an opportunity to respond to the magistrate judge's November 9, 2018 recommendation to dismiss the claims against the OCDC and the Board. Mr. Turner asserts that he did not receive the recommendation and that he was undergoing withdrawal from his psychotropic medication at the time. But he has not explained when he became aware of the recommendation, nor has he challenged the magistrate judge's reasoning for the recommendation. *See Burke v. Regalado*, 935 F.3d 960, 1021-22 (10th Cir. 2019) (holding litigant's failure to dispute district court's reasoning waived issue on appeal). We therefore deny the request.

insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation, brackets, and internal quotation marks omitted).

## B. *Deliberate Indifference*

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Because Mr. Turner's claims arose when he was a pretrial detainee, the Due Process Clause of the Fourteenth Amendment governs. *See Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019). "In evaluating such Fourteenth Amendment claims, we apply an analysis identical to that applied in Eighth Amendment cases." *Id.* (internal quotation marks omitted).

The "[d]eliberate indifference [standard] has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective component of deliberate indifference is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Burke*, 935 F.3d at 992 (internal quotation marks omitted). For the subjective component, the plaintiff must "show the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (citation and internal quotation marks omitted).

Prison officials have a duty to protect prisoners from harm, including harm caused by other prisoners. *See Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). "To prevail on a failure to protect claim, an inmate must show (1) that the conditions of his incarceration present an objective substantial risk of serious harm and (2) prison officials had

5

subjective knowledge of the risk of harm, in other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (brackets and internal quotation marks omitted), *cert. denied*, 139 S. Ct. 800 (2019).

## C. *Qualified Immunity*

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Burke*, 935 F.3d at 1001-02 (internal quotation marks omitted). Qualified immunity also applies to supervisory liability in § 1983 cases. *See Perry v. Durborow*, 892 F.3d 1116, 1123, 1127 (10th Cir. 2018) (holding defendant was entitled to qualified immunity for claims based on his supervisory conduct). "Accordingly, when a defendant raises a qualified immunity defense in a Rule 12(b)(6) motion, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (internal quotation marks omitted). "We may decide which of these two prongs to address first, and need not address both." *Estate of Redd ex. rel Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017). We resolve the qualified immunity issue here by addressing only the first prong—whether either HM Scott or Sheriff Whetsel violated Mr. Turner's constitutional rights.

6

## D. *Analysis*

### 1. **Housing Monitor Scott**

Mr. Turner suggests two ways that HM Scott failed to protect him: (1) he did not adequately assess Mr. Turner's report or Mr. Stamps's yelling that Mr. Stamps was threatening to kill him, and (2) he did not report the threats to other OCDC guards. Mr. Turner's allegations do not establish a violation under the subjective element of deliberate indifference.

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Marbury*, 936 F.3d at 1238. Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id.* at 1236 (internal quotation marks omitted).

As to the initial altercation, Mr. Turner did not allege HM Scott knew Mr. Stamps presented a substantial risk of harm or that he informed HM Scott as to how or why Mr. Stamps would kill him. *See Howard v. Waide*, 534 F.3d 1227, 1238 (10th Cir. 2008) (stating court should consider "background information that might inform prison officials of obvious risks to [detainee]" (internal quotation marks omitted)). He did not allege facts to support an inference that HM Scott knew Mr. Stamps could obtain a weapon. He

7

did not claim that he asked to be separated from Mr. Stamps. Rather, he asserted that he "walked away from Stamps," R. Vol. I, at 303, who went to his locked cell.

Mr. Turner contends that HM Scott's banging on the window showed that he knew Mr. Turner was at a substantial risk of serious harm. But the altercation stopped immediately after HM Scott banged on the window. Mr. Turner's allegations about the initial altercation show that HM Scott abated a tense encounter shortly after he became aware of it by signaling the detainees to stop, which they did.

As to Mr. Turner's claim that HM Scott failed to inform other OCDC personnel of Mr. Stamps's threats, the allegations do not show that HM Scott disregarded an excessive risk.

Mr. Turner thus did not allege sufficient facts to state a claim of deliberate indifference against HM Scott based on the first altercation. Under these circumstances, a reasonable jury could not find that HM Scott was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that he actually drew the inference. He does not complain about HM Scott's actions after Mr. Stamps was released from his cell. Mr. Turner failed to state a claim for a constitutional violation. The district court correctly granted qualified immunity to HM Scott.[2]

---

[2] In his reply brief, Mr. Turner asserts that HM Scott violated OCDC policies and that, if Mr. Turner had been allowed discovery, he would have discovered those policies. But he did not allege in his operative complaint that HM Scott violated any policies. Because he failed to adequately present this issue to the district court, we will not consider it. *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("[A]bsent extraordinary circumstances, we will not consider arguments raised for the first time on appeal.").

8

2. **Sheriff Whetsel**

Mr. Turner attempted to allege supervisory liability claims against Sheriff Whetsel for failure to protect him from Mr. Stamps and failure to train OCDC personnel, thus allowing Mr. Stamps's attack. He also alleged that Sheriff Whetsel failed to correct conditions at the OCDC identified in the 2008 DOJ report. But Sheriff Whetsel "cannot be held liable in his individual capacity for implementing [OCDC] policies or for the actions of [HM Scott] under a theory of supervisory liability, when there was no violation of [Mr. Turner's] constitutional rights." *Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009); *accord Burke*, 935 F.3d at 1010 (stating that a supervisor may not "be held liable based on an unconstitutional policy where there is no evidence of a constitutional violation by any individual subordinate"). We therefore affirm dismissal as to Sheriff Whetsel.

3. **State-law Claims**

Mr. Turner appeals the dismissal of his state-law claims against HM Scott and Sheriff Whetsel under the applicable statute of limitations. "We review statute of limitations questions de novo." *United States v. Johnson*, 920 F.3d 639, 643 (10th Cir. 2019).

The district court applied Oklahoma's one-year statute of limitations for actions filed "by a person based upon facts that occurred while the person was an inmate." Okla. Stat. tit. 12, § 95(A)(11). Mr. Turner conceded that his claim was untimely, but asserted he was entitled to equitable tolling because he had been unable to timely pursue this claim due to his injury, related surgeries, and a contagious infection. The court rejected

9

Mr. Turner's request for equitable tolling and dismissed the claims. It held that Mr. Turner did not meet any of the grounds for equitable tolling: "(1) a legal disability 'in cases where a plaintiff's competency is impaired or where the plaintiff has not yet reached the age of majority'; or (2) when defendants 'engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights,' . . . [or] 'exceptional circumstances.'" R. Vol. II, at 212 (quoting *Young v. Davis*, 554 F.3d 1254, 1258 (10th Cir. 2009)).

The district court observed that Mr. Turner did not explain how long he was incapacitated or how his condition prevented him from timely filing his claims. The court denied equitable tolling of the limitations period, noting that under Oklahoma law, "[e]xceptions to statutes of limitations are strictly construed and are not enlarged on consideration of apparent hardship or inconvenience," *Resolution Tr. Corp. v. Grant*, 901 P.2d 807, 813 (Okla. 1995).

On appeal Mr. Turner renews his equitable-tolling argument. He does not, however, attempt to explain how any of the grounds for equitable tolling apply to him or how the district court erred in denying relief. He therefore has waived this issue due to inadequate briefing. *See Burke*, 935 F.3d at 1021-22 (holding issue was waived on appeal due to inadequate briefing where litigant failed to dispute the reasons stated by the district court). Moreover, based on our review of the record and the applicable law, we affirm the district court's dismissal of the state-law claims.

## III. **CONCLUSION**

We (1) affirm the district court's judgment, (2) deny Mr. Turner's request for appointment of counsel on appeal and his request for "show of cause," (3) grant his motion for leave to proceed *in forma pauperis* on appeal, and (4) remind him of his obligation to continue making partial payments until the entire appellate filing fee is paid.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge